John V. Le Moyne *et al.*

*v.*

Benjamin F. Quimby *et al.*

| 70 | 399 |
| 129 | 61 |
| 70 | 399 |
| 134 | 278 |
| 70 | 399 |
| 35a | 364 |
| 70 | 399 |
| 104a | 5237 |

1. ADMINISTRATOR—*power of, as to real estate.* An administrator has no power over the real estate of decedent, except to obtain a decree of court and sell the same thereunder to pay debts, when the personal estate is insufficient.

2. SAME—*can not file a bill in equity to perfect title.* When it becomes necessary for an administrator to sell real estate to pay debts, he can not

file a bill in equity to perfect the title or relieve it of any burden, but he must sell it as he finds it.

3. CREDITORS OF ESTATES—*interest of, in real estate of decedent.* A creditor, whose claim has been duly allowed by the county court against an estate, has no such interest in the real estate of the deceased as will authorize him to file a bill in equity to perfect the title or remove incumbrances.

4. PARTITION—*when sale may be ordered.* A sale of the real estate of tenants in common can not be decreed by the court, for the purpose of distribution, until commissioners appointed by the court have reported, upon their oaths, that the land can not be partitioned without prejudice to the interests of the owners.

5. CONTRACT—*effect of, for net profits on sale of land.* A contract that, if land is sold at a specified price, the owner will allow to his agent, in the purchase and sale of the lands, a certain portion of the net profits, is only a personal contract, and gives the agent no interest in the land.

APPEAL from the Circuit Court of Cook county.

This was a bill in chancery, by Benjamin F. Quimby, against Henry M. Shepard, administrator of Charles W. Ricketson, and other parties, for the purpose of perfecting the title and ascertaining the interest of the estate of Ricketson in the lands described in the bill, and to enjoin the administrator from selling the same to pay debts, until such title and interest was settled and ascertained. John B. Lyon, one of the defendants, filed a cross-bill, setting up a claim to an interest in the land, and asking for the appointment of a receiver, that an account be stated, and that all the claimants of the land be required to convey to such receiver, and that thereupon the receiver sell the land at auction, and that the proceeds be divided according to the equities of the several parties.

Charles W. Ricketson, on the 5th of August, 1864, purchased the lands described in the bill, from parties who claimed by purchase from the canal trustees, subject to two or more deferred payments, which Ricketson assumed. The canal trustees had not conveyed the land, because the purchase money had not all been paid. This purchase, though

made by Ricketson in his own name, was in fact made for himself and others, and, at the time of making it, he executed a declaration of trust to H. Brady Wilkins, showing that he was entitled to one-third interest therein, and was to pay one-third of the deferred payments, which declaration of trust was recorded April 26, 1867. A similar declaration of trust was executed by Ricketson, dated August 5, 1864, showing that Silas Merrick was entitled to one-sixth interest in such purchase, and was to pay one-sixth of the deferred payments. This declaration was recorded September 11, 1867.

At the time of the purchase by Ricketson, there was a verbal arrangement between him and Michael Tiernan, by which Tiernan was to hunt up and buy land for said Ricketson, and this land was bought under that arrangement. On the 22d of June, 1865, the agreement between Ricketson and Tiernan was reduced to writing, and on the 8th of October, 1866, it was recorded. By this written agreement, Ricketson agreed, in consideration of Tiernan's services in securing the land, that, if it should be sold for a specified price, Tiernan should have one-half of the net profits, after deducting purchase money, taxes, costs and expenses, and ten per cent interest; but if sold for less than the specified price, then he was to have only one-fourth of such net profits; but no sale was to be made without Ricketson's consent, and he reserved the right to sell at any time, and for any price he might see fit. The agreement further showed that Ricketson's purchase was for himself, and in behalf of others.

On the 20th of May, 1870, Wilkins conveyed his interest in the land to John V. LeMoyne, and on the 7th of August, 1871, Merrick conveyed to LeMoyne his interest in the land. The first of said two last named conveyances was recorded July 18, 1870, and the other September 16, 1871.

Tiernan assigned one-half interest in his contract to John B. Lyon, and the other half to Hugh Maher, and, by subsequent assignments, Maher's interest became vested in LeMoyne.

26—70th Ill.

Ricketson died about October 4, 1871, having devised all his property, real, personal and mixed, to Polly Ricketson, his wife, and Lizzie W. Ricketson, his daughter and only child. Letters of administration were duly issued in Pennsylvania, where Ricketson resided and where he died, to William Phillips, and the certificates of the canal trustees of the purchase of the lands went into his hands, and he paid whatever remained due on the deferred payments, but did not obtain a deed.

In May, 1868, letters of administration were issued by the county court of Cook county, upon the estate of Ricketson, to Henry M. Shepard, and subsequently Quimby filed a claim against the estate, which was, on the 29th of November, 1869, allowed by the county court of Cook county. No personal property of the estate ever came into the hands of Shepard, and he filed a petition, and got an order to sell the interest of Ricketson in the land, for the purpose of paying debts of the estate, including the claim of Quimby.

Polly H. Ricketson and Lizzie W. Ricketson, on the 22d of January, 1870, conveyed all their interest in the land to Le Moyne.

The court below enjoined Shepard from selling under the order obtained by him as administrator, appointed a receiver, ordered Le Moyne, the canal trustees and Lyon, to convey to such receiver, and that, upon such conveyances being made, the receiver sell the land at public auction, and convey the same to the purchaser at such sale, and that he make a distribution of the proceeds of the sale amongst the various parties, according to their several interests as found by the decree, and that he report the sale to the court.

Messrs. Trumbull, Anthony, Church & Trumbull, and Mr. J. V. LeMoyne, for the appellants.

Mr. Melville W. Fuller, for appellee Quimby.

Messrs. Harding, McCoy & Pratt, for appellee Lyon.

Mr. Justice Craig delivered the opinion of the Court:

Upon the trial of this cause, the circuit court found that Ricketson, at the time of his death, owned one-half of the land, and Merrick and Wilkins were the owners of the other half, and that, since that time, Merrick and Wilkins conveyed to John V. LeMoyne. The court then decreed that Grant Goodrich be appointed receiver, and that John V. LeMoyne, the trustees of Illinois and Michigan canal and John B. Lyon, convey the land to the receiver, and that the receiver sell the land at public auction, for cash.

The first question that arises is, what right or authority Quimby, the complainant, had to file a bill to remove a cloud from the title to the land, or to settle conflicting interests of the several owners or claimants of the premises. He had no title to the land; he had no lien upon it; he was barely a creditor of Ricketson, and his claim had been probated in the county court of Cook county. In case it became necessary for the administrator to sell the land to pay the debts of the deceased, and a sale should be made, he, in common with other creditors, would share in the proceeds of the sale. Thus far complainant was interested in the premises, but no further.

The administrator of Ricketson had no interest in the land of deceased. He had no right to the possession of it, or the rents to be derived therefrom. In one contingency the administrator has a bare naked power over the land of his decedent, and nothing more. That arises where the personal estate is insufficient to pay the debts; then he may obtain a decree of court to sell land to pay debts. If the land is incumbered, or there is a cloud upon the title, he can not apply to a court of equity to relieve it of any burden. He must sell it as he finds it, or not at all. *Smith* v. *McConnell*, 17 Ill. 141; *Cutter* v. *Thompson*, 51 ib. 391; *Phelps* v. *Funkhouser*, 39 ib. 401; *Walbridge* v. *Day*, 31 ib. 379.

The administrator has no right to interfere with the land

of the deceased, in any respect or for any purpose, only to sell it to pay debts. He might be regarded as the trustee of the creditors. In converting real estate into money, he acts for the benefit solely of the creditors.

If, then, the administrator has no power to file a bill to remove incumbrances, we are unable to see upon what principle one of the creditors, who has no right, title or interest in the land, can do the very thing the administrator, whom the law appoints to dispose of the property of the deceased, for the creditors, can not do.

It would certainly be unwise to permit a creditor, who has no interest but his own to protect, to go into a court of chancery and stop the administrator from the discharge of his duties, and delay the settlement of the estate until the creditor might litigate some real or imaginary incumbrance upon the title to the real estate of the deceased. In portions of this State titles to real estate are conflicting, and were it established that any creditor of a deceased person might, at pleasure, go into a court of chancery and settle the title of the deceased by litigation, before it could be sold to pay the debts of the deceased, such a rule would inaugurate an endless source of litigation in the settlement of estates, and would be of no practical benefit to any person.

We have been referred by appellees to the case of *Freeland* v. *Dazey*, 25 Ill. 296, as authority that a court of chancery, in the exercise of its general jurisdiction, may, in certain cases, take upon itself the administration of estates. While this jurisdiction is sometimes exercised, it will only be assumed in extraordinary cases, and where special reasons are shown to exist why the administration of the estate should be taken from the probate court. No reasons are shown to exist, in this case, that the estate can not be properly administered in the county court. It is not pretended that Ricketson covered up or in any manner concealed his title to the property; neither is it claimed that the administrator has in any way mismanaged the estate or disregarded his duty in any respect.

On the contrary, it is shown, by the bill, that he has filed his petition to sell the land, and was proceeding with all reasonable dispatch to sell when he was enjoined by the bill in this case.

It is insisted by appellees, that if the heir can enjoin the administrator from selling until he can put the estate in condition to sell to prevent sacrifice, it follows that a creditor may do the same thing. There is no analogy between the supposed cases.

Upon the death of the owner of real estate, it descends directly to the heir. The heir becomes the absolute owner, subject only to the right of the administrator to sell to pay the debts of the deceased. If the personal estate is insufficient for that purpose, the administrator has the right to sell only so much of the land as will discharge the debts. Should there be a fictitious incumbrance on the land, that would deter purchasers from only paying half the value, the removal of which would cause the land to sell for its full value, it is eminently proper for the heir, in order to protect his estate, to institute proceedings to remove the incumbrance. The case, however, of a creditor against the estate of a deceased person is entirely different. He does not own or control the land; he has no interest in it; he acquires no specific lien on the land by the allowance of his claim against the estate; he only shares in the proceeds after a sale. *Stillman* v. *Young*, 16 Ill. 325.

The allowance of a claim of a creditor against an estate of a deceased person only establishes the debt of the creditor. It differs materially from a judgment: no execution can issue upon it. *Welch* v. *Wallace*, 3 Gilman, 495. What is here said, however, has no application to a case where a person fraudulently conveys lands, and, after death, a creditor's bill is filed by a creditor to subject the lands to the payment of debts. As was held in *McDowell* v. *Cochran*, 11 Ill. 31, and *Choteau* v. *Jones*, ib. 318, in such a case the decedent does not die seized of the lands, although the conveyance was

406          LeMoyne *et al.* *v.* Quimby *et al.*     [Sept. T.

Opinion of the Court.

fraudulent; but in this case no fraudulent conveyance had been made, but Ricketson died seized of the lands.

From these views, it follows that the demurrer interposed to the bill should have been sustained, and the bill dismissed.

There is, however, another objection to the decree, far more serious than the one just considered. The court find by the decree that John B. Lyon was entitled to the relief asked in his cross-bill, and, under the Tiernan contract, was entitled to a sale of the property, and a share of the profits according to the terms of the contract. This was a contract made between Ricketson and Tiernan, by which it was agreed that if Ricketson sold the lands for $150 per acre or more, then Tiernan was to receive one-half of the net profits arising from the sale, after deducting the purchase money and all amounts advanced for taxes and other expenses connected with the land, with ten per cent interest per annum. If the lands were sold for less than $150 per acre, then Tiernan was to receive one-fourth of the net profits, after the deductions aforesaid. The contract provided that no sale should be made without Ricketson's consent, and he reserved the right to sell at any time, and at any price he saw proper.

We can only regard this as a personal contract. It gave Tiernan no title to or interest in the land. It was an agreement to pay Tiernan, for his services in procuring the land for Ricketson, a certain part of the profits upon a sale, in lieu of a definite and fixed sum of money. By this contract, Tiernan had no control of the land or authority to sell. At such time as Ricketson saw proper to sell and dispose of the land, in the event there should be any profits, then Tiernan could share in them.

The cross-bill and decree proceed upon the ground that Tiernan, by the agreement, acquired an interest in the land, and not in the proceeds to be realized upon a sale. This is erroneous. *Stow* v. *Robinson*, 24 Ill. 534; *Porter* v. *Ewing*, ib. 618. These authorities settle this question beyond any

dispute, and, although other courts may have held otherwise, the decisions cited *supra* are based upon principles so well settled that they can not be shaken.

Should the land be sold for such a price that Lyon, as assignee of Tiernan, would be entitled to profits under the Tiernan contract, then he will become one of the creditors of the estate of Ricketson, and his only remedy is, to present his claim for adjudication and allowance, in the county court. This is the tribunal that the law has invested with full power to pass upon his claim, and, under the facts in this case, he has no right to invoke the aid of any other tribunal.

Another strange feature of this decree is, it not only authorizes the receiver appointed by the decree to sell the interest Ricketson had in the land at the time of his death, but it requires LeMoyne, who owns an undivided one-half of the tract of land, to convey to the receiver, and then empowers the receiver to sell the whole of the land.

Ricketson, at the time of his death, owned one-half of this tract of land, which contained near a section; Merrick owned one-third and Wilkins owned one-sixth. Since the bill was filed in this cause, Merrick and Wilkins have conveyed their interests to LeMoyne. Upon what principle the court could require LeMoyne to sell his half interest in this tract of land, without his consent, we are at a loss to conjecture.

We have a statute which provides that, where two or more persons own land undivided, one of the owners may file a petition for partition; and if commissioners, who are appointed by the court, report, under the sanctity of an oath, that the land is so situated that it can not be divided without manifest prejudice to the rights and interests of the owners thereof, then the court may decree a sale, and a division of the proceeds between the owners thereof.

But this proceeding is not based upon the statute. Without form or ceremony, the decree takes from LeMoyne his one-half interest in a large and valuable tract of land, and, against his protest, puts it in the hands of a receiver, and

empowers him to sell it at public auction, for cash. This is done on the application of Quimby, a creditor of Ricketson's estate, and Lyon, who may or may not be a creditor of Ricketson's estate.

To sanction this decree, would establish a precedent of the most dangerous character. The right to acquire and hold property can not be frittered away by such trivial pretexts as are set up in the cross-bill in this case. It rests upon a more solid foundation.

Ricketson had one-half interest in this tract of land. The administrator of his estate had obtained a decree to sell it. We are not able to see any reason why he should be enjoined or interfered with in the sale of the land under the decree he had obtained for that purpose.

If it be true, as is claimed, that Ricketson's interest in the land will not sell for as large a sum as it otherwise would had the courts passed upon the title, this is a misfortune of the case, which the legislative department of the government is competent to remedy, but the courts have no power to interfere.

The decree of the circuit court will be reversed and the bill and cross-bill dismissed.

*Decree reversed.*