JOHN LILL ET AL., Ex'rs,

v.

NAPOLEON B. BRANT, Adm'r.

1. STATEMENT.—Appellee's intestate, Horan, in 1865, gave an indemnifying bond for $7,000, with appellant's testator as surety thereon, and to secure said surety, soon after conveyed to him, by verbal arrangement, personal property worth about $16,000, and some real estate of considerable value, which was afterwards conveyed by warranty deed to the surety. Horan was at the time of these conveyances largely indebted to others than the creditor, whose debt was secured by the bond aforesaid. It was claimed by appellee that appellant's testator received said property in trust for the payment of the particular debt mentioned, and was to return to him the balance of the proceeds of said property after payment of the debt for which he was surety; and that appellee's testator had realized a large sum from the sale of the property for which he ought to account. The claim was first filed in county court against the estate of appellant's testator, and came to the Circuit Court by appeal.

2. Assignment—Statute of Frauds.—Taking the transaction as a whole, instead of being a mortgage, it was an assignment by an embarrassed debtor, and being verbal and comprising both real and personal property, it was invalid under the Statute of Frauds.

3. Assignment for benefit of creditors.—If the conveyance had been confined to personal property, been made in good faith for the payment of all creditors of the assignor, it would have been good; but being made for the payment of a particular debt, the balance to be returned to the assignor, there being other creditors, it must be considered as made to hinder and defraud creditors, and for this reason void under the Statute of Frauds, and and the assignor could maintain no action against the assignee for the return of any balance.

4. Administrator—Action for recovery of real property.—Even if the question of fraud was disregarded, and the transaction as to the real estate considered as a mortgage, then if the condition was not performed during the lifetime of the assignor, there would be an estate by way of equity of redemption, which at his death would be cast upon his heirs, and for which they and not the administrator could have an action. Or if the transaction should take the form of a resulting trust in the assignee, the heirs alone could maintain an action therefor.

5. Resulting trust—Statute of limitations—Jurisdiction of county court.—As to the personal property it is difficult to see how this action can be maintained, for if it partakes of the character of a resulting trust, the county court had no jurisdiction of the subject-matter; and if it is not of that character, but in the nature of an ordinary claim against the estate of a deceased person, then it is barred by the Statute of Limitations.

Appeal from the Circuit Court of Cook county; the Hon. Thomas A. Moran, Judge, presiding. Opinion filed June 22, 1880.

Mr. Sanford B. Perry and Mr. William A. Montgomery, for appellants; that the claim, so far as regards the personal property, is barred by the Statute of Limitations, cited Lill v. Brant, 1 Bradwell, 272; Hayward v. Gunn, 82 Ill. 385.

There is nothing in the transaction in the nature of a trust which exempts it from the bar of the statute: Angell on Limitations, Ch. 16, § 166; Hayward v. Gunn, 82 Ill. 385.

Where a deed is absolute in terms, the fact that the grantee is a trustee of the land conveyed cannot be established by parol: Rev. Stat. 1877, Ch. 59, § 9; 1 Perry on Trusts, §§ 78–84; Hovey v. Holcomb, 11 Ill. 660; Perry v. McHenry, 13 Ill. 277; Seaman v. Cook, 14 Ill. 501; Lantry v. Lantry, 51 Ill. 458; Rogers v. Simmons, 55 Ill. 76; Walter v. Klock, 55 Ill. 362.

An absolute deed, if intended as security for a debt, will be held as a mortgage: Rev. Stat. 1845, 105; Rev. Stat. 1877, 676.

But such deed will be so held only in equity: Miller v. Thomas, 14 Ill. 428; Ruckman v. Alwood, 71 Ill. 158; Knowles v. Knowles, 86 Ill. 2.

A county court has no equitable jurisdiction: Pahlman v. Graves, 26 Ill. 405.

The evidence must clearly show that the deed was intended as a mortgage: Lindaur v. Cummings, 57 Ill. 195; Smith v. Cramer, 71 Ill. 185; Magnusson v. Johnson, 73 Ill. 156; Remington v. Campbell, 60 Ill. 516; Dwen v. Blake, 44 Ill. 135; Price v. Karnes, 59 Ill. 276; Sharp v. Smitherman, 85 Ill. 154.

Messrs. BRANDT & HOFFMAN, for appellee; that the Statute of Limitations is no bar to this action, cited Goodheart v. Johnson, 88 Ill. 58; Roberts v. Fleming, 53 Ill. 196; Albrecht v. Wolf, 58 Ill. 186; Walden v. Karr, 88 Ill. 49.

A conveyance as security for a debt is a mortgage, and parol proof is competent to show that it was so intended: Blanchard v. Kenton, 4 Bibb, 451; Delahay v. McConnell, 4 Scam. 157; Peterson v. Clark, 15 Johns. 205; Dunham v. Day, 15 Johns, 555; Clark v. Henry, 2 Cow. 324; Lane v. Shears, 1 Wend. 443; Brown v. Dean, 3 Wend. 208; Walton v. Conly's Adm'r. 14 Wend. 63; Tillson v. Moulton, 23 Ill. 648; Nat. Ins. Co. v. Webster, 83 Ill. 470; Hancock v. Harper, 86 Ill. 450.

The county court has jurisdiction of equitable money demands, for which an action at law would not lie: Moore v. Rogers, 19 Ill. 347; Dixon v. Buell, 21 Ill. 203; Albretch v. Wolf, 58 Ill. 186.

If a trustee buys in an outstanding title, he holds it for his *cestui que trust:* King v. Cushman, 41 Ill. 31; Whitney v. Peddicord, 63 Ill. 249; G. C. & S. R. R. Co. v. Kelly, 77 Ill. 426; Ward v. Armstrong, 84 Ill. 154.

Where the evidence is conflicting, and there is evidence to sustain the verdict, it will not be disturbed: Keeler v. Stuppe, 86 Ill. 310; C. B. & Q. R. R. Co. v. Lee, 87 Ill. 457; Chicago v. Herz, 87 Ill. 542; Stickle v. Otto, 86 Ill. 164; Miller v. Balthasser, 78 Ill. 202; Bell v. Gordon, 86 Ill. 501.

Lill v. Brant.

McALLISTER, P. J.   This case arises upon a claim filed May 14th, 1876, in the County Court of Cook county, by appellee Brant, as administrator of the estate of David Horan, deceased, against the executors of William Lill, also deceased. The claim having been disallowed by the county court, the administrator took an appeal to the circuit court, wherein there have been several trials, with various results.   The cause was before this court, on appeal, at the April term, 1878, when a judgment in favor of appellee was reversed, for the reason, among others, that there was a variance between the statement of the claim and the proofs, and it was remanded.   1 Bradwell, 266.   Whereupon the statement was amended by leave of the circuit court, and on the last trial there was a verdict for twenty thousand dollars for appellee, on which the court below, overruling defendant's motion for a new trial, gave judgment, and they again appeal to this court.

The amount is so large, the case itself so peculiar, that we have felt bound to bestow upon it all the care and consideration its importance demands.   From plaintiff's own showing, it appears that Horan, sometime prior to Feb. 1, 1865, kept a billiard saloon in Chicago, in partnership with one Dennehey, who wished to withdraw from the business; but the firm had become indebted to Paris & Allen, of New York, in the sum of about seven thousand dollars.   Horan wished to buy out Dennehey's interest, but the latter would sell only upon condition that Horan would assume that debt, and give him, Dennehey, a bond of indemnity; which was accordingly done, and Lill executed it as surety.   Horan, thereupon carried on the business alone, paying upon the Paris & Allen debt, from time to time, until he had paid in all about two thousand dollars. Meanwhile he had become indebted to other creditors, in all about twenty-seven hundred dollars.   Paris & Allen were pressing him for the balance of their debt, and so were his other creditors; and it seems he was either unable or unwilling to pay any of them.

Under this state of things, Paris & Allen, either having brought, or being about to bring, suit upon their demand, and debts being due his other creditors, about February 1, 1865,

Lill being liable on his bond of indemnity for the amount of the Paris & Allen debt, an arrangement was entered into between Horan and Lill, to the effect that the latter should take all Horan's property, pay the Paris & Allen debt out of it, and turn over what was left to Horan. The arrangement was merely verbal, and was subject to terms which will be hereafter set forth. In pursuance of such agreement, as the plaintiff insisted, Horan put all his personalty, including a large stock of goods, which had been provided for his business, into Lill's hands; that such goods were readily convertible into money; and, as plaintiff claimed and gave evidence tending to prove, were worth between sixteen and seventeen thousand dollars; also that the arrangement of February 1, 1865 (though verbal), embraced all of Horan's property, including his real estate, of which he had two suburban lots of considerable value; also, that this transfer included the same goods, with slight diminution, which Horan had recently bought on credit of D. R. Brandt & Co. and John Black, of Milwaukee, on account of which purchase he had paid nothing at all. And it appeared that soon after the transfer was made, application was made to Lill, on behalf of these last-named creditors, whose debt amounted to about twenty-seven hundred dollars, to give them some undertaking or obligation to pay them out of Horan's property in his hands; but that Lill, while admitting that he had sufficient to pay them all as well as himself, nevertheless refused to bind himself, because, as he said, after paying himself, he was bound to return the surplus to Horan himself.

It appears that Paris & Allen, having brought suit against Horan and Dennehey in the early part of the year 1865, in May of that year got judgment for $5,040.00, which Lill paid September 6, 1865. It further appears, from the plaintiff's own showing, that notwithstanding Lill already had in his hands the personalty, readily convertible into money, of the value of upwards of sixteen thousand dollars, and the amount of his liability on account of the Paris & Allen debt was fixed by judgment at $5,040.00, yet afterwards, July 14, 1865, Horan voluntarily conveyed to Lill, as was claimed by plaintiff, in

pursuance of said original arrangement, all of his, Horan's, real estate, being the two lots above referred to; and Lill, with full knowledge of the fact of there being other creditors, accepted such conveyance. The deed, however, was an absolute warranty deed. As before said, Lill paid the Paris & Allen debt for which he was so bound, Sept. 6, 1865; but it was plaintiff's theory that he paid it out of the proceeds of said goods, so put into his hands by Horan. Horan died some time in 1868, and it inferentially appears that he had children. Lill, still having in his hands said real estate, and, as was claimed by plaintiff, a residue of the personalty, after paying said judgment of about $10,000, in April, 1875, converted the said real estate into money, realizing about $5,000, and died afterwards, in the same year. The residue of the personalty and proceeds of the realty, with interest, constitute the only elements of the verdict in this case.

The amended statement of the claim, after describing the property conveyed, sets forth the terms of the transfer thus: "All of said property, real and personal, was conveyed to said Lill upon the trust, understanding, and agreement, that he, said Lill, should hold said property as trustee or mortgagee, for his indemnity as surety as aforesaid, during his pleasure and discretion, and until he should deem it advisable and for the best interests of himself and said Horan to dispose of the same, at which last named time or times he should dispose of the same, and out of the proceeds thereof indemnify himself as such surety as aforesaid, and after indemnifying himself as such surety as aforesaid said Lill should account for and pay to said Horan such sum as should remain of the proceeds of said property, if any. Said Lill thereupon took possession of all said property, real and personal, and from time to time converted the same into money, and realized from said personal property a large sum, to-wit, $25,000, between said February 1, 1865, and April 1, 1875. Said Lill held said real estate as such trustee or mortgagee, until to wit, April 1, 1875, when he disposed of the same, and realized therefrom a large sum of money, to wit, $10,000."

There was no writing in reference to this transfer, or any part

of it, except the absolute warranty deed. But taking the terms of it as set out in the statement of claim, we are of opinion that the transaction, instead of being a mortgage, or in the nature of a mortgage, comes more closely within what is known as an assignment by an embarrassed debtor, as plaintiffs' evidence shows Horan was. It was verbal, however, and embraced, according to plaintiff's statement of his claim, both real and personal property. If it had been confined to the personal property, been made in good faith, and provided that the surplus, after Lill was indemnified, should be applied on the debts of Horan's other creditors, as the law was then, it would have been valid. Burrill on Assignments (3d Ed.), Sec. 154, and cases cited in notes. But the proposition is incontrovertible, that a verbal assignment by a debtor of all his real and personal property, is invalid. Of course such an attempted transfer of real estate standing by itself, would, by the Statute of Frauds be inoperative; and the rule is well recognized by the courts, that although an agreement without writing embraces personal as well as real property, it will be regarded as entire, and governed by the Statute of Frauds. Thayer v. Rock, 13 Wend. 53; Meyers v. Schemp, 67 Ill. 469. "Where *real* property is either wholly or in part the subject of the assignment, a writing is expressly required by the statute." Burrill on Assignments Sec. 126, and authorities in notes.

But aside from that, the terms as set out in the statement of claim, by which the plaintiff was bound, clearly constituted an express trust, as contradistinguished from an implied one; and being verbal, it was governed by section 4 of the Statute of Frauds and Perjuries (R. S. 1845, p. 259), and was utterly void. Adams v. Adams, 79 Ill 517.

Now this proceeding, although in the nature of the equitable action of money had and received, was essentially an action at law; and was brought to enforce the agreement set out in the statement of claim, so far as the same remained executory. The agreement in the terms, as above stated, was the basis of the action. As an agreement, considering the subject-matter of it, and the fact that it was verbal, it was within the Statute of Frauds, and no action would lie to enforce it.

But there is another difficulty lying in the way of a recovery by the plaintiff, as administrator of the estate of David Horan; and that is, that, upon the undisputed facts established by the plaintiff, the transaction was entered into with a view to hinder, delay and defraud the other creditors of Horan. Lill's obligation as surety upon the bond of indemnity, bound him only to the extent, so far as material to this case, of the Paris & Allen judgment for $5,040.00. He was fully aware of the fact of Horan having other creditors who were pressing him for payment. Under that state of things, Horan and Lill enter into the agreement, February 1, 1865, whereby the former was to turn over to the latter all his property, real and personal, which Lill was to "hold" during his pleasure and discretion, and until he should deem it advisable and for the best interests of himself and said Horan to dispose of the same;" and when he should so deem it advisable, he was to dispose of it, and out of the proceeds to indemnify himself, and then account to and pay over the residue—to whom? Horan's other creditors? No, but to Horan himself. It is a rule, as to which every respectable authority in the land is agreed, that if a debtor in embarrassed circumstances make an assignment or conveyance of all his property in trust to pay only one or a part only of his creditors, leaving others unprovided for, while, by the transaction, he reserves a substantial benefit to himself from the property so assigned or conveyed such assignment or conveyance, will be held to be fraudulent and void. Thomas v. Jenks, and Grover v. Wakeman, 1 Am. Lead. Cas. (5th Ed.) p. 78, and cases in notes; Goodrich v. Downs, 6 Hill (N. Y.) 438; Bowen v. Parkhurst, 24 Ill. 257; Burrill on As. Sec. 148.

But this is not all. We have already stated the fact that the transfer included nearly, if not all, the very goods which Horan had but recently purchased on credit, and had not paid for, of the other creditors, who were thus left unprovided for; but one of the firm of D. R. Brant & Co., soon after the transfer, applied to Horan, as he testifies in Lill's presence, for at least a return of the goods so purchased of his firm, but was refused even that, and he says he thereupon denounced Horan as a swindler, in Lill's presence. And then it appears that

even after that, whilst Lill already had in his hands, according to plaintiff's evidence, personal property, readily convertible into money, and worth between sixteen and seventeen thousand dollars, to indemnify him for a liability of only $5,040, Horan, July 14, 1865, voluntarily, and in pursuance of the assignment made February 1, 1865, as plaintiff claims, conveyed to Lill, and he accepted, all his real estate. Under these circumstances, all shown by plaintiff's own evidence, for what purpose was that conveyance made except to hinder, delay and defraud Horan's other creditors? It was not and could not have been to secure Lill, who already had this sixteen thousand dollars' worth of readily convertible property to secure him for a liability which was in fact $5,040, though plaintiff strenuously insisted it was only $3,500. No clearer case could be proven by human testimony than the plaintiff made, of an intent to hinder, delay and defraud creditors. And yet it appears that Horan lived some three years after February 1, 1865; that those other creditors were cognizant of all the facts, but took no steps to put their demands into judgment, and after the issue and return of executions to file a creditor's bill, and reach sufficient of this property to satisfy their claims. Such a course was open to them. Horan himself could have maintained no suit, either at law or in equity, to compel Lill to restore to him the residue of the property or its proceeds. So far as the transaction was executed it was binding between the parties; but the law would not lend its aid to enforce that part of the transaction which remained executory, because it was an object of the agreement to defraud others, and that was an illegal object. Miller v. Merckle, 21 Ill. 152; Winston v. McFarland, 22 Ill. 38; Taylor v. Bowers, 1 L. R. Q. B. Div. 300.

If Horan in his life-time would have been denied the aid of the law, to enable him to carry into effect an agreement made with the view to defraud his creditors, can his administrator, who has acquired, in a measure, the legal existence of the deceased, maintain this action, which, according to the plaintiff's own theory, seeks to accomplish the same result? We think not.

The instructions for plaintiff, while purporting to group hypothetically all the facts necessary to a recovery, contain no

hypothesis as to the *bona fides* of the transaction. With such evidence before the jury that omission was error, although we feel bound to say that a verdict negativing the fraud, as the verdict rendered impliedly does, would have to be set aside, if that were the only question in the case.

The next question for consideration is the right of the administrator of Horan's estate to recover the proceeds of the real estate. It is the settled law of this State that the land of one dying intestate descends to the heir; and although it is subject to the payment of debts, and may afterwards be divested by decree and sale of the administrator, the heir is nevertheless the owner, and entitled to the rents and profits meantime; that the administrator, therefore, takes neither an estate, title or interest in the realty. Smith v. McConnell, 17 Ill. 135; Shoemate v. Lockridge, 53 Ill. 503; LeMoyne v. Quimby, 70 Ill. 399.

By the undisputed facts, Horan died 1868. The land was not sold by Lill until April, 1875. The personalty, plaintiff claimed and gave evidence tending to prove, was sufficient to satisfy Lill's claim, and leave a surplus of about ten thousand dollars; the recovery is upon that basis. The statement of claim is, that Lill took the property as trustee, or mortgagee, to indemnify him for becoming surety for the Paris & Allen debt, which he paid, Sept. 6, 1865, as plaintiff insisted, out of the proceeds of the personalty. We think the transaction set out was not in the nature of a mortgage; but suppose it were, then would not the incident attach of an equity of redemption in Horan? We will exclude the idea of fraud, and regard it for the time being as a mortgage; then, if the condition were not performed, by Lill's liability becoming satisfied during Horan's life-time, Horan was the owner of the equity of redemption at his death. An equity of redemption is an estate in land, whereof there may be seizin. Casborne v. Scarfe, 1 Atkyn, 603. When Horan died, that estate was cast upon the heir. But if the mortgage debt was satisfied out of the personalty before his death, as it was according to plaintiff's theory, then Lill held the legal title as naked trustee, the beneficial ownership being in Horan. On his death that estate would go to the heir. Then, on the other hand, suppose we regard the transaction as a conveyance to Lill, in trust, for the particular

purpose of indemnifying him as such surety, and that parol evidence was competent to establish that trust. The central idea of plaintiff's case was, that that purpose was satisfied out of the personalty, leaving a large surplus of such personalty unexhausted; and that afterwards Lill converted the realty into money, which plaintiff sought to recover, as well as the residue of the personalty. But it is the settled rule of equity that where the objects or purposes of a trust by accident or otherwise fail, and do not take effect, or if they are all accomplished and do not exhaust the whole property, there a resulting trust will arise for the benefit of the grantor or devisor and his heirs. 2 Story's Eq. Jur. (Perry's Ed.) Sec. 1200, and cases in notes; 4 Kent's Com. 307; Lewin on Trusts, *177; Ib. 182–3.

The general rule was comprehensively formulated by Lord Chancellor Thurlow, in Robinson v. Taylor, 1 Ves. Jr. 44. He said: " The general rule is, that where property is given for particular purposes in trust, nothing more is subject than those purposes require; and if not exhausted, there shall be a resulting trust for the residue, after the purposes are answered as to the real estate, for the heir-at-law; as to the personal, for the personal representatives."

If, therefore, the purposes of this trust were satisfied out of the personalty in Horan's life-time, without exhausting even that, and leaving the real estate not subject, then a resulting trust arose for Horan's benefit, and on his death the equitable estate in the realty would descend to his heirs, and the trustee would hold the naked legal title for their benefit, and the personality for Horan's personal representatives. If the purpose did not become satisfied until after his death, then the resulting trust, as to the realty, would arise for the benefit of his heirs, who alone could maintain a bill to compel the naked trustee to convey the legal title to them. Hill v. Bishop of London, 1 Atkyn. 618.

In no point of view was the administrator entitled to recover the proceeds of that real estate in this action. According to the doctrine of Varnum v. Meserve, 8 Allen, 158, if Lill had converted the real estate into money during Horan's life-time, by the proper exercise of a valid power, and the money was not all needed for the purpose for which the power was exer-

Lill v. Brant.

cised, then the change from real into personal property would have been complete, and the proceeds would have been a part of Horan's personal estate, to be received and administered as assets by his administrator. But that was not this case. The land was not converted till years after Horan's death. When it was converted, Horan's heirs were the beneficial owners; and in equity the money so received would belong to them, if they, being *sui juris*, chose to receive it as money; otherwise it would remain stamped with the quality of real estate. Hill. v. Cock, 1 Ves. & B. 173; Oberly v. Lerch, 39 C. E. Green, 344; Lerch v. Oberly, Ib. 575; Holland v. Cruft, 3 Gray, 180; Fletcher v. Ashburner, 1 Lead. Cas. in Eq. (4th Am. Ed.) part 2, p. 1118, and notes; Ackroyd v. Smithson, Ib. 1171, and notes.

The administrator is not in a position to claim that the real estate was converted into personal by the contract itself, and invoke the doctrine of equitable conversion; because, (1), no contract to convert, out and out, was proved; (2), if it were, it was only verbal, and within the Statute of Frauds; (3), that doctrine is altogether a doctrine of equity. In law it has no being. 1 Lead. Cas. in Eq. *supra*, p. 1066.

It is clear, beyond doubt, that the administrator had no interest in or right to recover the proceeds of the real estate; wherefore, if he could maintain this action at all, the recovery could only be with reference to the personal property. If that be so, and the claim was one not falling within the exclusive jurisdiction of a court of equity, and was cognizable at law, then it was subject to the operation of the Statute of Limitations, and was barred thereby. But if, on the other hand, it was not subject to the operation of that statute, for the reason that the case was one of a direct trust, so as to be cognizable only by a court of equity, within the rule in Hayward v. Gunn, 82 Ill. 388, then, it follows that the county court had no jurisdiction of it. We are of opinion that in no point of view was plaintiff entitled to judgment in this action. The judgment of the court below must, therefore, be reversed.

Reversed.

Wilson, J., took no part in the decision of this case.