Francis W. Dunbar et al., Defendants in Error, v. American Telephone & Telegraph Company et al., Plaintiffs in Error.

### Gen. No. 14,422.

1. CONTRACTS—*when transactions contrary to public policy not absolutely void.* Transactions which are absolutely void for some purposes may be binding and effectual for all other purposes.

2. DECREES—*upon what must be predicated.* A decree which undertakes to adjust equities between the parties to litigation is erroneous if no pleading exists upon which such equities may be adjusted.

3. CORPORATIONS—*when vote cannot be predicated upon stock.*

Dunbar v. Am. Tel. & Tel. Co., 142 App. 6.

The transferee of stock who has received the same in violation of the public policy of the state cannot after the illegal transfer has been adjudicated vote such stock, nor can such stock be voted by the assignor of the same until such time as the sale by him has been set aside. (Dunbar v. American Telephone Co., 224 Ill. 9, interpreted.)

4. CORPORATIONS—*how vote of stock must be made.* It being provided by resolution that voting at a corporate election shall be by written ballot, one who seeks to question the legality of the result declared because of the failure to count his vote, must show that he voted by written ballot.

Bill in chancery. Error to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Reversed and remanded. Opinion filed June 30, 1908.

Statement by the Court. Upon the reversal of a decree of the Circuit Court sustaining demurrers to the amended bill in this record (Dunbar v. American Telephone Co., 224 Ill. 9) such of the defendants as had not answered the bill filed answers; and the cause being at issue was heard before the chancellor who rendered the decree, to reverse which this writ of error is prosecuted.

The decree finds that the facts alleged in paragraphs II to XI, inclusive, of the amended bill are proven to be true, except certain allegations not material here to be mentioned. The decree finds that on January 4, 1902, pursuant to a written contract between them, the defendant Barton purchased from defendant Milo G. Kellogg 3,306 shares of the capital stock of the Kellogg Switchboard & Supply Company (hereinafter called the Kellogg Company) and that Barton in making the purchase acted, not in his own behalf, but in the behalf of, and as the agent of the defendant Ameriican Telephone & Telegraph Company (hereinafter called the American Company), a corporation organized under the laws of New York, which furnished the money necessary to make said purchase; and that later the American Company attempted to purchase and received the certificates of shares of the Kellogg Com-

pany from other defendants, making its total holdings
of 4,311 shares of the stock of the Kellogg Company;
that the necessary operation of said purchases at the
time they were made tended, and tends to materially
suppress competition, and created in said American
Company and its licensee companies a monopoly in
rendering telephone service to the public throughout
the United States, and that such was the purpose of
the American Company in making each and all of said
purchases, and that such purchases were contrary to
the public policy of this state and were void, and no
title to said stock passed to the American Company
or to Barton.

The decree further finds that in December, 1906, the
Kellogg Company declared a dividend of fifty per
centum upon all its capital stock, and paid to the
American Company or to its representatives $215,550
as dividends upon said 4,311 shares of stock. That on
January 21, 1907, the day fixed for the annual meet-
ing of the stockholders of the Kellogg Company by
the by-laws of the company, for the election of direc-
tors, the annual meeting convened at the office of said
company, and at this meeting 4,970 shares of stock
were represented by the shareholders in person or by
proxy; that at said meeting Milo G. Kellogg was pres-
ent in person, and in the election for directors tend-
ered his ballot as a stockholder of said company for
the said 3,306 shares of stock, and also for 100 other
shares owned by him; and others of said shareholders
representing 331 shares, for the following persons as
directors for the ensuing year: F. W. Dunbar, K. B.
Miller, G. L. Burlingame, Milo G. Kellogg, Leroy D.
Kellogg, James G. Kellogg and J. B. Edwards; and
that Barton and Driver as representatives of said
American Company by proxy tendered in said meet-
ing their ballots for the 4,311 shares of said stock so
claimed to have been purchased by the American Com-
pany, for six other persons as directors of said com-
pany and for J. B. Edwards as a seventh director, as

did also the owners of 228 other shares, and the defendant DeWolf, who was acting as chairman of the meeting, received the ballots of the representatives of the American Company and refused to accept said ballots of Kellogg for 3,306 shares; and declared Wallace L. DeWolf, Clarence Buckingham, J. B. Edwards, F. J. Dommerque, Hopkins J. Hanford, E. H. Brush and M. Lester Coffeen, for whom the representatives of the American Company cast their ballots, elected as directors of the company for the ensuing year; that thereupon the complainant Dunbar assumed to act as chairman and declared those persons for whom Kellogg and his associates voted duly elected as directors.

The decree finds that Kellogg was entitled to be recognized as the owner of the stock which he had sold, and that the representatives of the American Company were not entitled to be recognized as such stockholders or to have their ballots counted; and that by reason of said election Dunbar, Miller, Burlingame, Milo G. Kellogg, Leroy D. Kellogg, James G. Kellogg, and Edwards (hereinafter called the Kellogg directors) were duly elected and are the directors of the Kellogg Company; that by the charter and by-laws of the company its board of directors consists of seven members, all of whom are required to be elected annually.

The decree then adjudges and declares that Milo G. Kellogg, Clarence Buckingham, Wallace L. DeWolf, Katharine W. Wright, Adolphus Busch, Charles Nagel, Hopkins J. Hanford and Scott Hanford are still the owners of said 4,311 shares of stock so attempted to be purchased by the American Company, and enjoins the Kellogg Company, its directors and officers, from rejecting the votes of any of, or refusing to recognize, said persons or their assigns as the owners of said shares except as said injunction is thereinafter modified, and also from recognizing or treating the American Company or its assigns as the owner or owners

thereof, or permitting the American Company or any of its assigns to vote any of said 4,311 shares.

The decree makes the temporary injunction issued in the cause permanent, and enjoins the American Company, the Western Electric Company, Enos M. Barton and George F. Baker and all other persons claiming ownership of or interest in said 4,311 shares by assignment or transfer, from either of said last named parties (since the institution of this suit) and their agents from claiming ownership of or any interest in any of said shares, and also from attempting to vote said shares at any annual meeting of the stockholders of the Kellogg Company, and from claiming by reason of said shares to be stockholders of the Kellogg Company, and from attempting to sell, transfer or vest ownership in others of any of said shares, and from in any way interfering with Milo G. Kellogg's ownership or control of, or his right at any meeting of stockholders of the Kellogg Company to vote said 3,306 shares belonging to him, or the like ownership or right of Buckingham in respect to the 262 shares, or the like ownership of DeWolf in respect to the 203 shares, and Mrs. Wright respecting 12 shares, and Busch respecting 215 shares, and Hanford respecting 259 shares, and Nagel respecting 42 shares, and Scott Hanford respecting 12 shares.

DeWolf, Buckingham, Dommerque and Hopkins J. Hanford are each permanently enjoined from acting as, or claiming to be, directors of the Kellogg Company, or interfering with the management or property of the company, until he or they shall, after the entry of the decree, be duly elected or appointed such director, officer or agent of the company; and also from interfering with the Kellogg directors.

DeWolf is enjoined from acting as president of the Kellogg Company, and from interfering with or preventing the election of any person as president by the Kellogg board of directors.

Dommerque is restrained in like manner from acting

as secretary of the Kellogg Company, and from all interference with the business or property of the company or with any secretary or other officer elected or appointed by the Kellogg directors.

The American Company, the Western Electric Company, and the Kellogg Company and each of its officers and agents, are permanently restrained from interfering with or obstructing the Kellogg directors and their successors when duly elected or any officer or agent duly designated by them, in the possession or control of the property and business of the Kellogg Company, which with its officers and agents is directed to turn over and deliver, upon request of the Kellogg directors, all the property, books, papers, etc., of the Kellogg Company to the Kellogg directors.

The decree then makes elaborate directions with reference to the deposit of the stock certificates for the 4,311 shares with the clerk of the court to make distribution thereof according to the decree, and the manner and conditions of disposing of said shares. It is not necessary to state these provisions of the decree. The decree then provides that if the American Company fails to comply with its provisions as to depositing the certificates of stock, the same are canceled and held for naught and the Kellogg Company is directed to issue and deliver to the clerk of the court new certificates for said shares, such new certificates to be for the several numbers of shares as will permit the distribution of the stock in the manner and upon the conditions contemplated by the decree; and the American Company is ordered to repay to the Kellogg Company the $215,550 paid to it as dividends upon the 4,311 shares of stock.

A. N. WATERMAN, HOLT, WHEELER & SIDLEY, TENNEY, COFFEEN, HARDING & SHEARMAN, WILSON, MOORE & McILVAINE, JOHN J. HERRICK, and ALDRICH & McAULEY, for plaintiffs in error.

HENRY S. ROBBINS, for defendants in error.

MR. JUSTICE SMITH delivered the opinion of the court.

The Supreme Court (Dunbar v. American Telephone Co., 224 Ill. 9) held that the material facts alleged in the amended bill were sufficient, if proven, to justify a decree giving complainants, defendants in error, some relief. The first question then for us to consider and decide is—are the material averments of the amended bill supported by the evidence?

The evidence as condensed in the abstract of record fills nearly one thousand printed pages, and it is manifestly difficult for us here to discuss it analytically. It would serve no useful purpose to do so; and we shall simply state our conclusion. In our opinion the evidence sustains the material averments of the bill, and under the law, the complainants are entitled to relief.

We come now to the question of the scope and extent of the relief to which the complainants are entitled. The law of the case as to the right to relief on this bill is settled by the Supreme Court. The bill was before that court on demurrers, and the court was not called upon to decide, and did not decide, the question now presented. But the character, scope and extent of the relief to be granted upon the pleadings and evidence in this record must depend in a large measure upon the situation and rights of the parties and the principles of law to be applied thereto, as determined and adjudicated in Dunbar v. American Telephone Co., *supra*. Counsel in their oral and printed arguments in this case take widely divergent views of the purport and effect of that decision, and these irreconcilable views are pressed upon our attention with great earnestness and ability.

The decree of the court below proceeds upon the theory that the complainants are entitled as stockholders of the Kellogg Company, having no ownership or interest in the 4,311 shares disposed of by the decree, not only to an injunction restraining the Ameri-

can Company and its agents and attorneys from voting at any meeting of the Kellogg Company the shares of stock purchased by it, and from all participation by it or its agents in the management and control of the company and its business, but, that the complainants have also the right to have the ownership of the stock in question settled and determined as between the American Company and the sellers of the stock, without any cross-bill filed by such seller or sellers, and issue formed thereon between them and the American Company. Proceeding upon this theory the decree declares that the purchases of the shares of stock were null and void and of no effect, not only as to any right of the American Company or its agents to attend and vote such stock at any meeting of the stockholders of the company, but that such purchases and transfers were absolutely null and void and without force or effect as between the contracting parties, and that the title to the stock and the right to vote the same remained in the sellers, Milo G. Kellogg, Clarence Buckingham, Wallace L. DeWolf, Mrs. Wright, Adolphus Busch, Charles Nagel, Hopkins J. Hanford and Scott Hanford, who have received and still hold respectively the full consideration paid therefor, as fully and completely as if no sales and transfers thereof had been made. This theory of the rights of the complainants and the legal situation of the parties is urged upon us by counsel for complainants, and by counsel for Milo G. Kellogg, and it is urged that the opinion of the Supreme Court clearly and without reasonable question or doubt holds it as the law of the case.

· In our opinion the decree is fundamentally erroneous as to the equitable rights of the complaining stockholders, and the legal and equitable rights of the defendants to the bill.

Without doubt there are expressions in the opinion in the Dunbar case which, apart from the precise question being considered by the court, and standing alone by themselves, support the view of the decree and the

position of counsel for complainants and for Kellogg, that the transaction between Kellogg and Barton was ineffectual for any purpose whatever and that Kellogg remained the owner of the stock exactly as he was before the transfer was made and as if nothing whatever had happened or had been attempted to be done. But if the opinion is studied as a whole we do not think it supports this view. Reading the opinion with the point in mind which the court was discussing when the expressions or terms were used, we think the meaning of the court is clear: Le Moyne v. Quimby, 70 Ill. 399, 404. When the court was discussing the question, at page 26 of the opinion, whether minority stockholders can take advantage of the illegality in the transaction between Kellogg, and Barton representing the American Company, and restrain the voting of the stock at any meeting of the stockholders of the Kellogg Company, and any interference in the management and control of its business by the American Company, it sustains that right in the complainants upon two grounds, the first of which is stated to be that the attempt to acquire an ownership of the stock for the purpose of voting it, and thereby control the management and business of the company, "was absolutely null and void, as being in excess of its chartered powers." As we read the language used the court intended to say, and did say, that as between the minority stockholders and the American Company the attempt of the latter to hold and vote the stock for the purposes charged in the bill was absolutely null and void as against the complainants.

After stating the second ground upon which the complainants were entitled to maintain the bill, the court takes up the question of the decree on Kellogg's cross-bill, and in affirming the decree, dismissing it, says:

"No necessity whatever for that bill is shown. At most, Milo G. Kellogg was a mere nominal party to the original bill. No relief was prayed against him,

and if a decree granting the prayer of that bill had been rendered he would have obtained all he was in equity entitled to.''

When the averments of the original bill and the cross-bill and the prayers for relief in those bills respectively are considered, we think the above statement in the opinion that a decree granting relief under the original bill would give Kellogg ''all he was in equity entitled to,'' warrants the conclusion that all that is said in the opinion of the court as to the nullity of the purchase and transfer of the stock is said with reference to the claims asserted by the complainants as minority stockholders; and that the invalidity or nullity of the stock purchases extended only so far as it was necessary for the protection and the enforcement of the rights of the complainant stockholders. It has no reference to the legal status between the American Company and any seller of the stock.

We think the additional opinion rendered on consideration of the petition for rehearing also supports this view.

That transactions which are absolutely void for some purposes may be binding and effectual for all other purposes is familiar law. Campbell v. Whitson, 68 Ill. 240; Le Moyne v. Quimby, *supra;* Anderson v. Roberts, 18 Johns. 513; Ewell v. Daggs, 108 U. S. 148.

In the last cited case, the court, referring to a statute of Texas making a contract of loan and interest above a specified rate ''void and of no effect as to the interest,'' said: ''All that can be meant by the term, according to any legal usage, is that a court of law will not lend its aid to enforce the performance of a contract which appears to have been entered into, by both the contracting parties, for the express purpose of carrying into effect that which is prohibited by the law of the land. * * * And the effect is the same if the contract is in fact illegal, as made in

violation of the statute, whether the statute declares it to be void or not.''

Considering that part of the opinion which declares the stock sale absolutely null and void, and the particular expressions therein in which those terms are used, in the light of these authorities, and keeping in mind that the court was discussing the question whether the objection to the transaction that it was *ultra vires* could be raised by private individuals having the relation to the corporation of stockholders, or only by the state, we think it is clear that the court intended to hold that in view of the relation of the complainants to the corporation as stockholders, the illegal contract of the corporation might be challenged by them, and restrained at their instance, and to that end and for that purpose, and as to the complainants the transaction was null and void.

As stated above, we think the decree is erroneous in that it recognizes in the complainants the right to have the titles to the 4,311 shares of stock determined and adjudicated upon their bill. The decree extends the relief to which complainants as minority stockholders are entitled too far. It recognizes certain equities as between the sellers and the American Company and attempts to adjust them without any proper pleading in the case as a basis. In this respect the provisions of the decree are, in our opinion, inconsistent, and cannot be reconciled with each other. What equities were there to be adjusted under complainants' bill if the finding and adjudication in the first part of the decree be true: ''that no title to said stock passed thereby from any of said sellers to said American Company or said Barton, but that despite said attempted sales each of said sellers still remains the owner of the shares of stock so attempted to be purchased from him?'' Surely there were no equities to be adjusted at the instance of complainants if the status of a continuing ownership in the sellers had existed and Kellogg was entitled to vote the stock

attempted to be sold by him at the annual meeting of the stockholders in January, 1907, and the Kellogg board of directors were then duly elected, as declared by the decree. While the decree declares that the sales and transfers of stock to the American Company were null and void and ineffectual to pass titles, it seems, nevertheless, to give them sufficient legal life and effect to support equities in favor of the American Company against the sellers and seeks to adjust and protect such equities. This, we think, is not in consonance with either the practice or the principles of equity.

By the decree DeWolf, president; Dommerque, secretary, and Hanford and Buckingham, also members of the board of directors, were removed from office, and enjoined from exercising any of the powers or rights attached to their respective offices, and from interfering with the Kellogg board of directors (which directors are declared duly elected) in the management of the company, its property or business. The right of the Kellogg directors to act as directors of the company is based on what occurred at the stockholders' meeting held on January 15, 1907.

The record shows that DeWolf, Hanford and Buckingham were elected directors of the company long before the sale of the Kellogg stock on January 4, 1902, and at each annual meeting after that date they were unanimously re-elected as directors. At the annual meeting held a year or so after the sale, Dommerque was elected a director and was re-elected at each annual meeting thereafter. At no time prior to the annual meeting in January, 1907, were any other candidates proposed, and the entire vote of the stockholders was cast for them without objection or question. Irrespective, therefore, of whether the title to Kellogg's stock passed to Barton or the American Company, and whether the voting right to that stock was in Kellogg or the purchaser from him, the legality of the election of plaintiffs in error to their respective

offices was beyond reasonable question, prior and up to January 15, 1907.

The by-laws of the company provided that officers and directors should hold their offices until their successors were elected and qualified. Plaintiffs in error, therefore, being thus legally elected and installed in office, would hold their offices respectively until they were displaced by the legal election of their successors. Their right then to the offices does not depend merely upon whether they were duly elected in January, 1907, but whether they were put out of office by the election of others as their successors. This question does not depend merely upon the right of Barton or the American Company to vote the stock, or whether that right was vulnerable and would be denied if attacked. It depends primarily upon the existence in Kellogg at that time of the right to vote the 3,307 shares which he had sold; and, secondarily, whether he exercised his voting right at the meeting by casting written ballots. The burden of proving the right in Kellogg, and that he exercised it according to the resolution, passed unanimously, that the voting should be by ballot, was upon the complainants in the bill.

Without going into the details of the record of the meeting of January 15, 1907, it appears without controversy that a total of 4,970 shares of stock were represented there by the owners, in person or by proxy. When the roll was called and Mr. Barton's name was reached (he being the record owner of the shares sold to him by Kellogg), Mr. Holt, holding a proxy for these shares and for 528 shares standing in the name of W. B. Driver on the books of the company, cast the ballots for all the shares so represented by him for plaintiffs in error for directors. Thereupon, Milo G. Kellogg announced that he was the owner of 3,307 shares standing in the name of Barton, and that he represented them in person, and that he cast his ballot for 3,305 shares for each of the

Kellogg directors, naming them, but did not in fact cast the ballot.

The ballots were then counted and plaintiffs in error were declared elected as directors, Kellogg's announcement of his vote for the Kellogg directors being ignored. Dunbar then announced the election of the Kellogg directors by a vote of 3,700 shares for them out of a total vote of 3,900 shares.

In our opinion, Milo G. Kellogg had no right to vote the 3,307 shares sold by him to Barton or the American Company and standing in the name of Barton; nor did Barton or the American Company have the right to represent and vote those shares. Eliminating, then, these shares of stock as not being represented legally at the meeting, there was no election of directors, for the reason that the by-laws of the company provide that a majority of the entire stock of the company is necessary to constitute a quorum at a stockholders' meeting.

Kellogg had parted with the title to the shares of stock sold by him to Barton by a transaction which was so far good between the parties that it was and is in force and effect until it is set aside. It has sufficient validity to require a rescission before Kellogg can be restored to the ownership of the stock. An essential part of such rescission is a return of the consideration. (Dunbar v. American Company, *supra.*) In our opinion the decree dismissing Kellogg's cross-bill was an adjudication that as between himself and the buyer of the stock he had no right to it. Gould v. Evansville R. R. Co., 91 U. S. 526; Reynolds v. Mandel, 175 Ill. 615; Wright v. Griffey, 147 *id.* 496; Attorney General v. C. & E. R. R. Co., 112 *id.* 520; Nickless v. Pearson, 126 Ind. 486; Lindsley v. Silver Star Mining Co., 115 Fed Rep. 47; 1 Herman on Estop., par. 273, 470.

It follows, we think, from the record in this case standing by itself, and upon the authorities cited, the complainants have failed to prove that the old board

of directors, of which plaintiffs in error are members, were superseded and ousted by the election of the Kellogg board and that the decree in declaring the Kellogg board elected is erroneous.

There are other erroneous provisions in the decree which we cannot take the time to point out specifically, but we shall proceed to state the relief which, in our opinion, the complainants are entitled to. They have no standing to insist upon any relief beyond that which is necessary for their own protection against injury. Such protection from injury will be fully met and that relief will be fully answered by an injunction upon findings warranted by the evidence against Barton and the American Company and his or its agents or officers from voting the 4,311 shares of the Kellogg Company stock purchased from Milo G. Kellogg and others, and from acquiring or attempting to acquire further stock of the Kellogg Company and vote it at any stockholders' meeting of said company, and from exercising or attempting to exercise any control, direction, supervision or influence whatsoever over the acts and doings of the Kellogg Company by virtue of the holding of such stock therein; and by enjoining the Kellogg Company, its officers, directors and agents, respectively and collectively, from permitting the stock to be voted by the American Company or in its behalf by its agents or attorneys at any corporate election for directors or officers of said Kellogg Company, and from paying any dividends to be hereafter declared on account of such stock to the American Company or to any person or corporation for it. This was the relief given in United States v. Northern Securities Co., 120 Fed. Rep. 721, 723, and affirmed by the U. S. Supreme Court, 193 U. S. 197, and it has reason and authority to support it.

The decree of the Circuit Court is reversed, and the cause is remanded with directions to the Circuit Court to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*