## SUPREME COURT.

SAMUEL W. MILBANK *et al.* agt. THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, THE BUFFALO, NEW YORK AND ERIE RAILROAD COMPANY, HUGH J. JEWETT, receiver, *et al.*

*Railroad corporation — its rights as to the purchase of the stock of other corporations.*

Though a railroad corporation may take title to all kinds of personal property, including stock of other railroad corporations, to secure debts due it, the investment by a railroad company of its corporate funds in the purchase of the stock of another corporation is not necessary in the exercise of any of its corporate powers, and is unauthorized and in violation of the statute and is consequently *ultra vires.*

While a railroad corporation remains the owner of the stock of another corporation it may collect and receive dividends thereon, and has the right to sell and dispose of the same, but has no right to vote thereon; and the stockholders of the company, whose stock is thus held, have the right to have the company holding such stock enjoined from so voting, in case it threatened to do so.

*Erie Special Term, October*, 1882.

*C. H. Daniels, Edward Robinson* and *John Clinton Gray*, for plaintiff and Buffalo, New York and Erie Railroad Company.

*J. C. Kilburn* and *E. C. Sprague*, for New York, Lake Erie and Western, and Hugh J. Jewett, receiver, &c.

HAIGHT, *J.* — This action was brought by the plaintiffs, who are the owners of forty-nine shares of the capital stock of the Buffalo, New York and Erie Railroad Company, on behalf of themselves and the other stockholders, to restrain and enjoin the New York, Lake Erie and Western Railroad Company,

Milbank *et al.* agt. New York, Lake Erie and Western Railroad Co.

its agents, officers and directors, from voting at any meeting of the stockholders of the Buffalo, New York and Erie Railroad Company for the election of directors or otherwise. The Buffalo, New York and Erie Railroad Company is a corporation organized in the year 1857, and now existing under the laws of the state, for the purpose of constructing and operating a railroad from the city of Buffalo to the village of Corning. On or about the 27th of February, 1863, the Erie Railway Company entered into an agreement in writing with the Buffalo, New York and Erie Railroad Company, by which the latter leased and rented to the Erie Railway Company its real estate, road-bed, rolling stock, branch tracks, property, &c., for the period of 490 years, at an annual rental of $233,100. At various times during the years 1873 and 1874 the Erie Railway Company purchased 5,759 shares of the capital stock of the Buffalo, New York and Erie Railroad Company, being more than one-half of all of the capital stock of such company, and paid for the same out of its corporate funds. Subsequently, and in the year 1878, all the property and franchises of the Erie Railway Company were sold under a decree of this court on foreclosure of a mortgage on such property to the defendant the New York, Lake Erie and Western Railroad Company. By such sale the New York, Lake Erie and Western Railroad Company claims to have become the owner of the 5,759 shares of the stock of the Buffalo, New York and Erie Railroad Company, and threatened to vote thereon at the next meeting of such corporation for the election of directors.

There is no conflict as to the facts. In the first place it becomes important to determine whether or not the purchase of the stock of the Buffalo, New York and Erie Railroad Company by the Erie company was *ultra vires* and against public policy. Section 8 of chapter 140 of the Laws of 1850, being the general railroad act, provided that "it shall not be lawful for such company to use any of its funds in the purchase of any stock in its own or any other corporation." It is contended, however, that this provision did not apply to

the Erie Railway Company. The New York and Erie Railway Company was organized under chapter 224 of the Laws of 1832, and was authorized to construct a railroad from New York city, through the southern tier of counties, to the shore of Lake Erie, at some eligible point between Cattaraugus creek and the Pennsylvania line. Various amendments were enacted prior to 1848, but in none have I found any provisions prohibiting corporations from purchasing stock in other corporations.

In 1848 the general railroad act was passed (*See chap.* 140). Section 11 contained the same prohibition contained in section 8 above quoted. Section 46 provides that " all existing railroad corporations within this state shall, respectively, have and possess all the powers and privileges, and be subject to all the duties, liabilities and provisions contained in this act," &c. So that, under this section, the New York and Erie Railroad became bound by the provisions of section 11, and was expressly prohibited from purchasing the stock of another corporation. This chapter, together with the acts amending the same, were, however, repealed by section 50 of the general railroad act of 1850. After the repealing clause it contained the following : " But all railroad companies formed under said act are hereby continued in existence, in the same manner as if said act were not repealed, and such companies shall be subject to all the provisions and shall have the same powers, rights and privileges, and be subject to the same duties, as if they had been incorporated under this act." It will be observed that this saving clause only extends to railroad corporations " formed under this act." While the New York and Erie Railroad existed and did business under the act and was bound by its provisions, still it was not formed under it and is therefore not covered by the saving clause. Section 49 of the general act of 1850 provides that certain sections shall apply to existing railroad corporations, but fails to mention section 8.

It is quite possible that it was an oversight on the part of

Milbank *et al.* agt. New York, Lake Erie and Western Railroad Co.

the legislature in failing to provide that section 8 of the general act of 1850 should apply to existing railroads, or in failing to embrace them in the saving clause in repealing the act of 1848. Certainly there appears to be no reason for continuing the prohibition clause as to all railroads formed after 1848, and repealing it as to those previously formed. It consequently becomes necessary to consider the question at common law and under the general statute. In England there appears to be some conflict in the authorities; but in the United States, Green, in his American notes of Brice's *Ultra Vires*, page 95, says: "Corporations cannot purchase or hold, or deal in stock of other corporations, unless expressly authorized to do so by law."

It has been held that a railroad corporation cannot lease its road bed, rolling stock and franchises unless authority is expressly given, and such leases, if made, would be *ultra vires* and void (*See Thomas* agt. *Railroad Company*, 101 *U. S. R.*, 71; *Troy and Boston Railroad Co.* agt. *Boston, &c., Railroad Co.*, 86 *N. Y.*, 107; see, also, 80 *N. Y.*, 27; 77 *N. Y.*, 232). In the case of *Talmage* agt. *Pell* (7 *N. Y.*, 328) it was held that a bank corporation has no power to purchase the stocks of other corporations for the purpose of selling them for profit, or as a means of raising money, except when such stocks have been received in good faith as security for a loan made or a debt due such corporation, or when taken in payment of such loan or debt. In the case of *The Mechanics' Mutual Savings Bank* agt. *The Meridian Agency Company* (24 *Conn.*, 156) it was held that a company organized to do a general insurance agency, commission and brokerage business has no power to subscribe to the stock of a savings bank and building association. In the case of *The Central Railroad Company* agt. *The Pennsylvania Railroad Company* (21 *N. J. Eq.*, 475) it was held that a corporation cannot, in its own name, nor in the name of individuals, subscribe for stock or be a corporator under the general railroad law. In the case of *Berry* agt. *Yates* (34 *Barb.*, 200) it was

held that an insurance company has no power to subscribe to the capital stock of another insurance company. In the case of *Hazelhurst* agt. *Savannah Railroad Company* (43 *Georgia*, 57) it was held that if one railroad buy the stock of another, it practically undertakes a new enterprise not contemplated by its charter. This cannot be done by any implication; the power to do so must be clearly expressed. In the case of *The Central Railroad Company* agt. *Collins* (40 *Georgia*, 583) it was held that the power to buy and hold real and personal property and make contracts is confined to such property and such contracts as are incident to building, managing and maintaining the railroad; that the purchase of stock in another railroad is outside of the objects of the charter.

In this state there is a statute which appears to me to control the question. Section 1, title 3, chapter 18, part 1 of the Revised Statutes in substance provides: "Every corporation, as such, has power — first, to have succession by its corporate name for the period limited in its charter, and when no period is limited perpetually; second, to sue and be sued; third, to make and use a common seal; fourth, to hold, purchase and convey real estate; fifth, to appoint subordinate officers and agents; sixth, to make by-laws." Section 2 provides: "The powers enumerated in the preceding section shall vest in every corporation that shall hereafter be created, although they may not be specified in its charter, or in the act under which it shall be incorporated." Section 3 provides: "In addition to the powers enumerated in the first section of this title, and to themselves expressly given in its charter or in the act under which it is or shall be incorporated, no corporation shall possess or exercise any corporate powers, except such as shall be necessary to the exercise of the powers so enumerated and given" (*See, also, Colby's N. Y. Railroad Laws, sec.* 115, *and authorities therein cited*). In the case under consideration the right to purchase stock is not expressly given, and it is not claimed that the purchase of the

stock in question "was necessary to the exercise of the powers enumerated and given."

The Erie Railway Company was organized under chapter 160 of the Laws of 1860 and chapter 119 of the Laws of 1861. As such corporation it purchased all the rights, property and franchises of the New York and Erie railroad under a decree in foreclosure. Under these statutes it appears that the Erie Railway Company possessed the same powers, and was subject to the same duties and liabilities as the New York and Erie Railroad Company, and no others. One had no more right to purchase stock in another corporation than did the other. It was under this state of the law that the Erie Railway Company purchased the stock in question. The conclusion that I have reached is, that such purchase was not necessary in the exercise of any of its corporate powers; that it was unauthorized and in violation of the statute, and was consequently *ultra vires*. I do not understand this conclusion to be in conflict with the authorities which hold that a corporation may take title to all kinds of personal property to secure debts due it, created in lawful and legitimate business. The collection of such debts is among the powers given by the statute, and is necessary in the exercises of its corporate franchises. But collecting debts and investing its corporate funds are quite different acts.

In the second place it becomes necessary to determine what, if any, title the New York, Lake Erie and Western Railroad Company have acquired to the stock, and what power it possesses over the same. In February, 1874, and subsequent to the purchase of the stock in question, the Erie Railway Company executed to the Farmers' Loan and Trust Company, as trustees, a mortgage to secure debts then owing, such mortgage covering all its property and franchises, including these shares of stock. The New York, Lake Erie and Western Railroad Company was organized under the general railroad law of 1850, and chapter 430 of the Laws of 1874, as amended by chapter 446 of the Laws of 1876. As

such corporation it purchased all of the property, rights and franchises of the Erie Railway Company under a decree made upon the foreclosure of the mortgage. Section 1, of chapter 446, among other things, provides that "the purchasers of such railroad property and franchises, and such persons as they may associate with themselves, their grantees or assignees, or a majority of them, may become a body politic and corporate, and as such may take, hold and possess the title and property included in said sale, and shall have all the franchises, rights, powers, privileges and immunities which were possessed before said sale by the corporation whose property shall have been sold as aforesaid."

It is contended that under this statute the New York, Lake Erie and Western Railroad Company's title to such stock becomes absolute and perfect, notwithstanding the fact that the purchase by the railway company was unauthorized and against public policy. It is true that this statute authorizes the new corporation to take, hold and possess the property included in the sale, but do these words of the statute change the character of the ownership from what it was under the old corporation? It held and possessed the title to the stock; it collected semi-annually the dividends accruing thereon. If a stockholder of that corporation had applied seasonably to the court it would have been restrained from paying out the corporate funds in the purchase of such stock. No action, however, was taken on the part of the stockholders; the corporation was permitted to purchase the stock and pay for it with its corporate funds. The money cannot be recalled. The stockholders having rested upon their rights until the purchase was consummated, cannot be heard to complain; notwithstanding the fact that such purchase was unauthorized and in violation of its charter.

By this statute the legislature intended to transfer this stock into the hands of the new corporation, and it does not appear to me that it was the legislative intent to invest the new corporation with any greater, different or other title than that

Milbank *et al.* agt. New York, Lake Erie and Western Railroad Co.

possessed by the old corporation. This, appears to me, must have been the intention of the legislature from the clause of the statute which follows: "And shall have all the franchises, rights, powers, privileges and immunities which were possessed before such sale, by the corporation whose property has been sold as aforesaid." That is, the new corporation has the rights and power over this stock which was possessed by the old corporation before the sale. Again, it appears to me that it could not have been the intent of the legislature to deprive other persons not interested in the old or new corporation so formed, of any rights or remedies which they may have had in reference to such stock; as, for instance, if the Buffalo, New York and Erie Railroad Corporation or its stockholders were injured or prejudiced by the voting upon such stock by the Erie Railroad Company, and were entitled to commence an action to protect themselves from injury, which might result from such voting, it does not appear to me that it was the intention of the legislature to deprive them of such remedy by authorizing a transfer of this property to the new corporation.

This brings us to consider in the third place, whether or not the Buffalo, New York and Erie corporation or its stockholders, the plaintiffs in this action, have such a standing in court that they can demand the relief prayed for. As I have before stated, the time has passed in which the stockholders of the Erie Railway Company could be heard to complain. The Buffalo, New York and Erie or its stockholders were not interested in the corporate funds of the Erie Railway Company, and the paying out of such funds in the purchasing of stock, although illegal and unauthorized, did not prejudice or injure such corporation or stockholders. The mere taking title to, the holding of the stock and the collection of the dividends thereon, as they may accrue from time to time, work no injury to the Buffalo, New York and Erie Railway Company or its stockholders, and consequently they have no cause for complaint. It is only when the New York, Lake

Erie and Western Railroad Company seeks to vote upon the stock, and thereby obtain control of the corporation, that such corporation or its stockholders can be prejudiced. No offer was made to vote on this stock while it was held by the Erie Railway corporation; it was not until after it had been purchased by the new corporation that the attempt to vote on it was made. The question thus presented is somewhat serious and important. I have been unable to find any reported case in which this question appears to have been squarely decided. The new corporation, the New York, Lake Erie and Western Railroad Company, has been organized under the general railroad law, and is now bound by section 8 of that statute.

It appears to me that the reason for the prohibiting of the purchasing of stocks in other corporations both under section 8 of the general railroad act and section 3 of the Revised Statutes, referred to, are twofold. First. It is against public policy to permit the officers of a corporation to take the corporate funds belonging to the stockholders and expend it in purchasing or speculating in the stocks of other companies. In the second place, it is against public policy to have or permit one corporation to embarrass and control another and perhaps competing corporation in the management of its affairs, as may be done if it is permitted to purchase and vote upon the stock. Green in Brice's " *Ultra Vires*," at page 604, under the head of "Proceedings by Third Parties," says: " The whole of the law, in so far as the present subject is concerned, may be summed up in the two statements: First, that as no person can institute legal proceedings on account of illegal acts, however great their detriment to the public or to others than himself, whether to obtain damages for them or to restrain their repetition, unless he has been personally damnified, so neither can he do so if the acts are *ultra vires* of a corporation instead of a private individual. Secondly, if on the other hand a private person be wronged by such acts, he may in every case sue for damages or to restrain them, and that, although the matter complained of would not have been

a tort if done by an ordinary citizen. In a word, torts committed by a corporation stand, as regard legal proceedings by aggrieved parties in respect thereof, in exactly the same position as torts by private persons, with the single qualification arising from the doctrine of *ultra vires*, that every act directed or concurred in by a corporation in excess of its powers will, if it causes harm to any third party, be a tort, and give to such party a right of action,

In the case of *The State ex rel. The Attorney-General* agt. *McDaniel et al.* ( 32 *Ohio*, 354–368 ), a question was raised as to the right of the Cincinnati, Hamilton and Dayton Railroad Company to vote upon the bonds which it held of the Dayton and Union Railroad. It was alleged that it held the bonds illegally; that it got the control of the same, and placed them in the hands of its directors to enable them to vote at the election for the purpose of getting control of the Dayton and Union Railroad, and of running the same in the interest of the Cincinnati, Hamilton and Dayton Railroad Company. It was held that it was not necessary to decide the question so raised, although the question was elaborately discussed upon the argument ; but the learned justice who wrote the opinion in the case says, in reference thereto, that " we are all inclined to the opinion that it, the Cincinnati, Hamilton and Dayton Railroad Company, had no such power." This case seems to be the nearest in point of any that I have been able to find, and, while it was not necessary to decide the question in disposing of the case, yet all of the judges of the highest court of the state of Ohio were of the opinion that the railroad company who had acquired the bonds of another railroad company had no power to vote thereon, and thus acquire control of such corporation.

In the case under consideration, the New York, Lake Erie and Western Company have acquired by purchase the majority of all the stock issued by the Buffalo, New York and Erie Railroad. If its officers are permitted to vote thereon, they can elect a board of directors of their own choosing. It

would then be for the interests of the New York, Lake Erie and Western Railroad Company to have the Buffalo, New York and Erie Company managed and controlled in the interests of the former company. This would be liable to result in injury to these plaintiffs and their fellow stockholders, and if so they have a right to complain.

My conclusions, therefore, are that while the New York, Lake Erie and Western Railroad Company is the owner of the stock in question, and has the right, while it remains the owner, to collect and receive the dividends thereon, and has the right to sell and dispose of the same, it has not the right to vote thereon, and that the stockholders of the Buffalo, New York and Erie Railroad Company have the right to have it enjoined from so voting in case it threatened to do so. Judgment should be ordered for the plaintiffs, in accordance with the views herein expressed, with costs.