# CASES

### ARGUED AND DETERMINED

#### IN THE

# SUPREME COURT OF ILLINOIS.

FRANCIS W. DUNBAR *et al. v.* THE AMERICAN TELEPHONE
AND TELEGRAPH COMPANY *et al.*

and

MILO G. KELLOGG *v.* SAME.

*Opinion filed October 23, 1906—Rehearing denied Dec. 19, 1906.*

1. TRUSTS AND COMBINATIONS—*when purchase of stock by corporation in another company will not be upheld.* A purchase by a corporation, in its own name or in the names of others as trustees or agents, of the majority of the stock in another company for the purpose of controlling the latter and preventing competition between itself and the other company is unlawful and will not be upheld by the courts.

2. SAME—*complete monopoly is not essential to render transaction unlawful.* The fact that the obtaining of the control of one corporation by another for the purpose of stifling competition between the two will not result in a complete monopoly because there are other concerns engaged in the same business does not render the transaction lawful.

3. CORPORATIONS—*a foreign corporation has no greater rights than a domestic one.* A foreign corporation coming into Illinois is subject to all the rules and regulations provided by the laws of the State for the government of domestic corporations, and has no greater power than a domestic corporation to purchase a majority

of the stock of another company for the purpose of stifling competition between the two.

4. SAME—*when purchase of stock is ultra vires.* If the purpose of a corporation in acquiring the stock of another company is to control the latter and prevent competition, the fact that the stock is purchased for it in the names of agents or trustees and the legal title vested in them has the same effect as though the corporation acted in its own name, and the purchase is *ultra vires.*

5. SAME—*right of the minority stockholders to enjoin voting of stock.* If a corporation has secured a majority of the stock of another corporation for the purpose of stifling competition and controlling the other company, the minority stockholders of the latter may maintain a bill to enjoin the former corporation from voting the stock it has illegally acquired.

6. EQUITY—*equity will look through devices to relieve the real situation.* A court of equity will look through all devices in order to understand the real situation and will grant relief against the threatened wrong.

7. SAME—*when cross-bill is properly dismissed.* It is proper to sustain a demurrer to and dismiss a cross-bill where the cross-complainant is a mere nominal party to the bill, against whom no relief is prayed, and who will obtain all relief he is entitled to in equity if a decree is rendered as prayed in the original bill.

8. PLEADING—*when bill to set aside contract of sale should offer to place purchaser in statu quo.* A bill in equity to set aside a contract for the sale of stock upon the ground of fraud or misconduct upon the part of the complainants' attorney should offer to place the purchaser *in statu quo.*

9. SAME—*what must be shown in bill to rescind sale for fraud.* A bill to rescind a sale for fraud upon the part of the purchaser must show that the complainant promptly disaffirmed the sale upon discovering the alleged fraud, and that he offered to refund the purchase price received by him or alleged some sufficient legal excuse for not doing so.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. J. W. MACK, Judge, presiding.

On June 5, 1903, appellants, Francis W. Dunbar, Kempster B. Miller, George L. Burlingame, Joseph C. Belden, Amanda W. Belden and Anna W. Pool, minority stock-

holders of the Kellogg Switchboard and Supply Company, filed their bill for relief in the circuit court of Cook county against the appellees, American Telephone and Telegraph Company, Western Electric Company, Kellogg Switchboard and Supply Company, Milo G. Kellogg, Wallace L. De-Wolf, and various other parties. The complainants in the amended and supplementary bills alleged that the Kellogg company was an Illinois corporation, organized for the purpose of manufacturing, selling, hiring, leasing or otherwise procuring, owning and disposing of electric telephone and telegraph instruments of all kinds; that they were minority stockholders of the corporation; that the capital stock consisted of 5000 shares of $100 each; that the defendant Wallace L. DeWolf was the president, Bush the vice-president and Leroy D. Kellogg the secretary and treasurer of the corporation; that upon its organization the defendant Milo G. Kellogg became the principal stockholder, owning about two-thirds of the capital stock. It further alleged that the defendant the American Telephone and Telegraph Company was organized under the laws of the State of New York and was doing business in the State of Illinois and most of the other States of the Union; that it succeeded to the business of the American Bell Telephone Company of Boston, and that the defendant Fish was its president; that it was the owner of large amounts of stock of numerous subsidiary telephone companies and operated a large system of telephone and telegraph lines in the United States; that it owned sixty per cent of the capital stock of the defendant Western Electric Company; that the said corporation and the Western Electric Company formed what is known as the Bell telephone monopoly, which for many years had exclusive control of the business in the United States as to the use of both telephone and telegraph apparatus through the numerous patents owned and controlled by it; that the defendant Fish is also a director of the Western Electric Company; that the defendant Western Electric

Company is an Illinois corporation engaged in the manufacturing, buying and selling of electric apparatus used in the construction, operation and maintenance of telephone and telegraph systems; that the defendant Barton is its president and manager, and is dominated by said Fish and said American company through the latter's control of the board of directors of said electric company and its ownership of a majority of its stock.

The bill further alleges that the telephone switch-boards, instruments and other apparatus of the independent exchanges throughout the United States have been manufactured by several companies organized and operated for that purpose, the largest and most important of which are the Kellogg company and the Stromberg-Carlson company, both of Chicago, each of said companies exceeding in capacity and amount of business that of any other telephone manufacturing company except the Western Electric; that the business of the Kellogg company for the larger independent exchanges has considerably exceeded that of the Stromberg-Carlson company or any other independent company; that because of the conditions and circumstances above stated, and in order to stifle competition in trade and create a monopoly in itself and its licensee companies, and for the purpose of enabling them to exact and maintain unreasonable and excessive rates and charges, said American company conceived the illegal purpose of acquiring at least two-thirds of the stock of the Kellogg company, and through such ownership to elect and maintain a board of directors which should not act in the real interests of said Kellogg company but in the interests of and subservient to the American company, and free that company and its licensees from the competition of the Kellogg company and independent exchanges; that to accomplish said illegal purpose said American company intends, as is charged on information and belief, by voting said stock, to dissolve said Kellogg company and in the meantime to conceal from the public the

real facts concerning the control of the Kellogg by the American company, and thereby temporarily enlarge the business of the Kellogg company and increase its importance to the efficient operation and existence of said independent exchanges, so that they may be more seriously crippled when the dissolution of the Kellogg company is accomplished, and also to temporarily cut the prices of manufactured products to the independent exchanges and thus cripple and destroy said Stromberg-Carlson company and other independent manufacturing companies, and also to impair the efficiency of the manufactured products and appliances of the Kellogg company and eventually to embarrass and cripple said independent exchanges by refusing to sell said manufactured products, especially those covered by the patents of said Kellogg company, to any of said independent exchanges or manufacturing companies, and by refusing to furnish promptly and of the required quality such additional apparatus as might be required; that the unavoidable consequence and result of this will be that the knowledge of the real control of said American company cannot be longer suppressed from the trade, and is now only suppressed by the denials of the American company and said Barton and others connected therewith, and as persons connected with independent exchanges learn that the Kellogg company is really controlled by the American company they will decline to make further purchases from the Kellogg company, and its business and good will and the value of its stock (now worth more than par) will be greatly lessened and impaired, if not wholly destroyed.

The bill further alleged that prior to January 4, 1902, the defendant Milo G. Kellogg owned 3307 shares of the Kellogg company, defendant Buckingham owned 262 shares, DeWolf owned 202 shares and Mrs. Catharine W. Wright owned 13 shares; that Milo G. Kellogg was then in ill-health and absent in California, but had authorized the defendant DeWolf, by a general power of attorney, to sell

and dispose of his stock; that to accomplish said illegal purpose said American company caused Barton to enter into a certain contract with DeWolf for the sale of the shares owned by Kellogg, and that DeWolf, as the agent of Kellogg, Buckingham and Mrs. Wright, delivered to Barton certificates of stock of the Kellogg company amounting to 3783 shares, and that by reason thereof the American company now claims to own, and does control, the same and the voting thereof; that said Barton agreed to pay for said shares, and all other shares offered by DeWolf to Barton prior to January 15, 1903, at the rate of $45 per share, in cash, upon delivery of the certificates, and also to pay, in addition, per share, the *pro rata* proceeds of any and all bills and accounts receivable due and owing to said company on December 1, 1901, amounting to $323,248.09, as the same are paid and collected; that it was further agreed that the indebtedness of the Kellogg company then existing at the banks should not be increased without the consent of said DeWolf and said Barton; that it was further provided that the "business of said company shall be carried on in the usual manner for the space of one year, so that all bills and accounts receivable due on December 1, 1901, can be collected in the usual course of business;" that to further accomplish said illegal purpose 528 shares were purchased by one Baker through Barton, who immediately delivered them to Fish, who now holds said certificates, which are in reality held for the American company; that the money paid for such stock was furnished by and was the money of the American company; that when the defendant Kellogg recovered his health and learned of the sale of said stock he heartily disapproved thereof and sought in every way to re-purchase the same, in order that the company might be managed in the interest of the stockholders and not be used as an instrument to create and perpetuate in said American company a monopoly of the telephone business; that Barton and Fish, while willing to sell a portion thereof, in-

sisted upon retaining sufficient to constitute two-thirds of the total stock of said company.

The prayer of the bill is, that the defendants may answer, answer under oath being waived; that a temporary injunction may issue, and upon final hearing be made perpetual, restraining the American company, Barton and the Western Electric Company from selling said 3783 shares of stock of said Kellogg company, and enjoining Fish from transferring said 528 shares of stock of said company purchased in Baker's name, as aforesaid, and enjoining the Kellogg company and DeWolf from making or permitting any transfers of any of said shares of stock upon the books of the Kellogg company; that a meeting of the stockholders be convened under the order of court at some short day to be fixed, for the election of a new board of directors, and that at such meeting, and at any further meeting of the stockholders of said Kellogg company, said American company, Barton and the said Western Electric Company, Fish, and the defendants in whose names such stock stands upon the books of the Kellogg company, be enjoined and restrained from voting said 3783 shares of stock or said 528 shares of stock so purchased, as aforesaid; that the defendants the American company, Barton, Western Electric Company, Baker and Fish, and the officers and agents of said two companies, be enjoined and restrained from attempting to dissolve said Kellogg company, and that said American company, Western Electric Company, and their officers and agents, and said Barton, Baker and Fish, be enjoined from interfering with, advising or attempting to control the action of any of the agents, officers or directors of the Kellogg company, or employing counsel in or interfering with any of the patent suits now pending against the Kellogg company; that the sale of said 3783 shares of stock by said Kellogg, said DeWolf, said Buckingham and Mrs. Wright to said Barton, and also the sale of said stock to Baker, be set aside and held for naught, and for other relief.

On October 31, 1903, the defendant Milo G. Kellogg filed a cross-bill, which was subsequently amended on April 19, 1904. It alleged that on November 23, 1901, Kellogg gave to DeWolf a power of attorney authorizing him to sell at public or private sale the stock in question; that, acting under this authority, DeWolf made the sale to Barton on January 2, 1902; that Kellogg was not informed of the sale until July 4, 1902, and that when so informed he entered into negotiations with Barton to get back his stock. The cross-bill then expressly adopts all the allegations of the original bill as amended which are not inconsistent with the cross-bill, and sets out at great length the facts stated in the original bill, and repeats, with some variations and additions, the allegations of the original bill in reference to the different telephone and telegraph supply companies mentioned in the original bill, and the purposes for which the stock of complainant was bought and the intentions of the purchaser thereof with respect thereto. The prayer of the cross-bill is, that the said pretended sale of the capital stock so held by the complainant therein in said Kellogg company which was made to said defendant Barton may be held and adjudged to be illegal and void and be canceled and set aside; that the complainant be held and adjudged to be the holder and owner of said capital stock; that the certificates of said capital stock be returned to complainant or to the said Kellogg company for transfer of the shares thereby represented to complainant, upon such terms as may be herein found and adjudged to be equitable; that said shares of stock be re-transferred by the said Kellogg company to complainant; that the said American Telephone and Telegraph Company, said Barton, said Western Electric Company and said DeWolf, and their agents, attorneys and representatives, be enjoined and restrained from selling or otherwise disposing of said 3307 shares of stock so belonging to complainant, or from voting the same, or any of them, at any meeting of the stockholders of said Kellogg company, and

said American Telephone and Telegraph Company, said Barton and said Western Electric Company from interfering with, advising or attempting to control the action of any of the officers, directors or agents of said Kellogg company; · that a temporary injunction as above prayed may issue herein, restraining said American company, said Barton, said Western Electric Company and said DeWolf, and their respective agents, attorneys and representatives, as aforesaid, and that upon the hearing herein said injunction may be made perpetual, and for other and further relief.

Some of the defendants answered both the bill and cross-bill, while others demurred to both. The demurrers were sustained and the bills dismissed for want of equity. Appeals were prosecuted by both the complainants in the original bill and in the cross-bill to the Appellate Court, where the decrees were affirmed, and further appeals have been prosecuted to this court. At the February term the cases were argued orally and submitted together.

Henry S. Robbins, for appellant Francis W. Dunbar:

All efforts, through the instrumentality of separate corporations, to stifle competition are illegal in this State. *People* v. *Gas Trust Co.* 130 Ill. 268; *Distilling Co.* v. *People,* 156 id. 448; *Bishop* v. *Preservers Co.* 157 id. 284; *Harding* v. *Glucose Co.* 182 id. 551; *United States* v. *Northern Securities Co.* 120 Fed. Rep. 721; *Northern Securities Co.* v. *United States,* 193 U. S. 197.

The law condemns the first step in the illegal transaction as well as the last. It is not necessary to show that a complete monopoly has resulted from the transaction in question. It is sufficient if it tends to create a monopoly. *People* v. *Gas Trust Co.* 130 Ill. 291; *More* v. *Bennett,* 140 id. 69; *Salt Co.* v. *Guthrie,* 35 Ohio St. 666; *Northern Securities Co.* v. *United States,* 193 U. S. 197; *Atcheson* v. *Mallon,* 43 N. Y. 148.

The purchase by the American company, even if its charter authorized it, of the control of this corporation was *ultra vires* and void.

Foreign corporations entering this State have no other or greater powers than corporations of like character organized under the laws of this State. Rev. Stat. chap. 32, sec. 26; *Stevens* v. *Pratt,* 101 Ill. 206; *Bishop* v. *Preservers Co.* 157 id. 284; *Harding* v. *Glucose Co.* 182 id. 551; *Martin* v. *Stove Co.* 78 Ill. App. 105; *Coler* v. *Power Co.* 64 N. J. Eq. 117.

Foreign corporations cannot exercise powers in this State which are contrary to public policy or in contravention of the laws of this State. *Hazelton Boiler Co.* v. *Tripod Boiler Co.* 142 Ill. 494; *Harding* v. *Glucose Co.* 182 id. 551; *Female Academy* v. *Sullivan,* 116 id. 384.

The American company, by asserting ownership in this stock, is asserting a right in contravention to our laws. *People* v. *Gas Trust Co.* 130 Ill. 268; *Distilling Co.* v. *People,* 156 id. 448; *Harding* v. *Glucose Co.* 182 id. 551; *Elkins* v. *Camden Co.* 36 N. J. Eq. 5.

The purchase of stock is none the less illegal and *ultra vires* because made in the name of individuals. *Martin* v. *Stove Co.* 78 Ill. App. 105; *Bank* v. *Jones,* 95 N. Y. 115; *Marble Co.* v. *Harvey,* 92 Tenn. 115.

These minority stockholders may maintain a bill to prevent the American company from being treated as a stockholder. The purchase was *ultra vires* in the sense that no title passed. *Carroll* v. *East St. Louis,* 67 Ill. 568; *Starkweather* v. *Bible Society,* 72 id. 50; *Hough* v. *Land Co.* 73 id. 23; *Alexander* v. *Tolleston Club,* 110 id. 65; *Barnes* v. *Suddard,* 117 id. 237.

This purchase of stock is absolutely void under the Anti-Trust act. *Ford* v. *Milk Shippers' Ass.* 155 Ill. 166; Anti-Trust act of 1891, sec. 5.

The bill is sustainable on the ground of danger to the stockholders' rights from the penalties resulting from a vio-

lation of the Anti-Trust act. *Harding* v. *Glucose Co.* 182 Ill. 551.

The bill should be sustained on the ground of threatened injury to the Kellogg company because of its control by a rival. It should also be sustained upon the further ground that it seeks to enforce an equitable right of stockholders. *Railroad Co.* v. *Woods,* 88 Ala. 630; *George* v. *Railroad Co.* 101 id. 631; *State* v. *Newman,* 51 La. Ann. 833; *Milbank* v. *Railroad Co.* 64 How. Pr. 20; *Parsons* v. *Smelting Co.* 25 Wash. 492; *Franklin Bank* v. *Bank,* 36 Ohio St. 350; *Marble Co.* v. *Harvey,* 92 Tenn. 115; Morawetz on Private Corp. secs. 431, 434; 2 Clark & Marshall on Corporations, sec. 540; 3 id. sec. 653*m;* Elliott on Private Corp. (2d ed.) 43; 2 Cook on Corporations, (4th ed.) sec. 615.

CHARLES H. ALDRICH, and HENRY S. McAULEY, for appellants Kempster B. Miller and George L. Burlingame:

Minority stockholders have a right to the aid of a court of equity to prevent the directors or majority stockholders from carrying out a fraudulent scheme, or to set aside the action of such directors or majority stockholders if such scheme has been consummated, when the corporation is in the control of such majority and action by the corporation itself cannot be secured. *Wheeler* v. *Steel Co.* 143 Ill. 197; *Hansom Cab Co.* v. *Yerkes,* 141 id. 320; *Peabody* v. *Flint,* 6 Allen, 52; *Menier* v. *Telegraph Works,* L. R. 9 Ch. 350; *Gamble* v. *Water Co.* 123 N. Y. 91; *Fougeray* v. *Cord,* 50 N. J. Eq. 185; *Dodge* v. *Woolsey,* 18 How. 331; *Hawes* v. *Oakland,* 104 U. S. 450; *Atwood* v. *Merryweather,* L. R. 5 Eq. 464; *Hazard* v. *Durant,* 11 R. I. 195; 2 Cook on Corporations, (5th ed.) secs. 645, 662.

Minority stockholders likewise have the right to the aid of a court of equity to prevent the directors or majority stockholders from committing their corporation to an *ultra vires* contract or alliance, and to rescind such contract or

alliance if already made, when the corporation is in the control of the majority interested in maintaining such unlawful relations and action by the corporation cannot be secured. *Dodge* v. *Woolsey,* 18 How. 331; *Hawes* v. *Oakland,* 104 U. S. 450; 2 Cook on Corporations, (5th ed.) secs. 629, 669, 670; *Coler* v. *Railway Co.* 54 Atl. Rep. 413; 1 Morawetz on Corporations, secs. 249, 273, 274; *Brewer* v. *Boston Theatre,* 104 Mass. 378; *Peabody* v. *Flint,* 6 Allen, 52.

The acquisition by the American company of a majority of the stock of the Kellogg company is *ultra vires* of the American company and void and confers upon the American company no right to control and direct the affairs of the Kellogg company, and the minority have a right to the aid of a court of equity to free their corporation from such control. *People* v. *Gas Trust Co.* 130 Ill. 268; *People* v. *Pullman Car Co.* 175 id. 125; *Marble Co.* v. *Harvey,* 92 Tenn. 115; 1 Morawetz on Corporations, sec. 431; *DeLaVergne R. M. Co.* v. *Savings Institution,* 175 U. S. 40; 1 Cook on Corporations, (5th ed.) secs. 314-317; *Martin* v. *Stove Co.* 78 Ill. App. 105; *Stebbins* v. *Perry County,* 167 Ill. 567.

JOHN S. MILLER, and PLINY B. SMITH, for appellant Milo G. Kellogg.

A. N. WATERMAN, and HOLT, WHEELER & SIDLEY, for appellees American Telephone and Telegraph Co., Western Electric Co., and Enos M. Barton:

No purpose of or tendency toward monopoly could lie in the mere ownership of the stock, but only in the use to be made of such ownership. But appellants do not seek to restrain improper use, but insist upon divesting ownership or totally destroying the voting power. Stockholders cannot be enjoined from voting because the persons they vote for may possibly abuse their trust. *Lucas* v. *Milliken,* 139 Fed Rep. 816; Cook on Corporations, sec. 615.

The right of private contract should not be interfered with on grounds of public policy except in a clear case. *Railway Co.* v. *Hamler,* 215 Ill. 525; *Railway Co.* v. *Voigt,* 176 U. S. 498.

The averments of illegal motive or purpose in acquiring the stock are irrelevant and impertinent and are not admitted by demurrer.   6 Ency. of Pl. & Pr. 396; Story's Eq. Pl. secs. 452, 453; *Mills* v. *Brown,* 2 Scam. 549; *Stow* v. *Russell,* 36 Ill. 18; *Railway Co.* v. *Horan,* 131 id. 288; *Christian County* v. *Merrigan,* 191 id. 484.

Even if the American company had directly acquired the stock, its alleged incapacity to take it was not absolute, but only relative; and nullity cannot be predicated of a transaction which may be valid or invalid, according to circumstances.   *Barnes* v. *Suddard,* 117 Ill. 237; *Hough* v. *Land Co.* 73 id. 23; *Alexander* v. *Tolleston Club,* 110 id. 65.

The mere ownership of the stock, legal or equitable, by the American company constitutes no wrong to the minority, and does not disqualify the owner from voting upon it in accordance with his own interests.   *Wheeler* v. *Steel Co.* 143 Ill. 197; *Rogers* v. *Railway Co.* 91 Fed. Rep. 299; *Pender* v. *Lushington,* 6 Ch. Div. 70; *Gamble* v. *Water Co.* 123 N. Y. 91; *Shaw* v. *Davis,* 78 Md. 318; *Davis* v. *Electric Co.* 77 id. 33; Beach on Corporations, sec. 247.

So far as the cross-bill attacked the sale of Kellogg's stock upon grounds alleged to be personal to him it did not involve a matter germane to the original bill, or which the other defendants could be compelled to litigate, except in an independent suit limited to that matter.   *Dows* v. *Chicago,* 11 Wall. 108; *Cross* v. *DeValle,* 1 id. 5; *Howe* v. *South Park Comrs.* 119 Ill. 101; *Morgan* v. *Smith,* 11 id. 194; *Newberry* v. *Blatchford,* 106 id. 599; *Industrial Co.* v. *Electric Supply Co.* 58 Fed. Rep. 742.

TENNEY, COFFEEN, HARDING & WILKERSON, (HORACE KENT TENNEY, of counsel,) for other appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The theory of the original bill is, that the American Telephone and Telegraph Company of New York (called the American company) purchased a majority of the stock of the Kellogg Switchboard and Supply Company of this State, (known in the record as the Kellogg company,) for the purpose of suppressing competition and creating a monopoly in itself of the telephone business. The ground of the demurrer was that the allegations of the bill were insufficient to sustain the cause of action, and that complainants, being minority stockholders in the Kellogg company, could not legally maintain it.

That the American company could not lawfully make a contract for the purpose claimed is not seriously questioned, but the argument of counsel for appellees is devoted to the proposition that the traversable allegations of the bill are not sufficient to present the theory relied upon and that complainants below are not entitled to the relief prayed. The demurrer, so far as the question thus raised is concerned, is general, and, of course, admits all the material facts well pleaded in the bill. The bill certainly is not a model of conciseness in pleading, but is justly subject to the criticism of being indefinite, uncertain and more or less evasive. We think, however, that it sufficiently shows, against a general demurrer, that the American company, through defendant Barton and others, became the purchaser of the shares of stock with the unlawful purpose and intention of putting the Kellogg company out of business or so using and controlling it as to prevent rivalry in business and creating a monopoly, and it called for an answer from defendants. If such was the purpose and object of the purchase, the decisions of this court are full to the effect that the law will not lend its aid to accomplish the object. That is to say, if the American company had purchased a majority of the capital stock of the Kellogg company in its own name

for the purpose of controlling the latter and thereby preventing competition between itself and the latter corporation, the transaction would have been one which the courts of this State would not uphold. (*People* v. *Chicago Gas Trust Co.* 130 Ill. 258; *Distilling Co.* v. *People,* 156 id. 448; *Bishop* v. *American Preservers' Co.* 157 id. 284; *Harding* v. *American Glucose Co.* 182 id. 551.) Nor can it be seriously contended that a purchase by the company in the name of others, as agents or trustees, will relieve the transaction of its illegality. To hold otherwise would be to sustain a transaction illegal in its character, accomplished by indirection, when it could not be done if the methods were direct. *Northern Securities Co.* v. *United States,* 193 U. S. 197, affirming the decision of the Circuit Court. (120 Fed. Rep. 721.)

The American company and its sub-company, the Western Electric Company, must be considered as one in determining whether the tendency of the purchase alleged in the bill would be to suppress the competition existing between the Kellogg company and the Western Electric Company in the manufacture and sale of telephone appliances, etc. Neither is it material that the Kellogg and Western Electric Companies were not the only parties engaged in manufacturing such appliances, for the reason that if such was the case, while a complete monopoly or a complete restraint of competition would not necessarily result, the tendency would be in that direction, which is sufficient to condemn the transaction as unlawful. *People* v. *Chicago Gas Trust Co. supra; More* v. *Bennett,* 140 Ill. 69.

The averment of the bill to the effect that it is the purpose of the American company to suppress competition and create in itself a monopoly is further aided by the averment that Barton, through whom the purchase was made, agreed to pay, as part of the purchase price, so much per share in cash and the balance by applying thereto the *pro rata* proceeds of any or all bills and accounts reasonably due and

owing to the Kellogg company on December 1, 1901, the same to be settled and paid to said seller as the same are paid and collected by said company, plainly indicating that a dissolution of the Kellogg company was contemplated, because in no other event could the American company appropriate the assets of the Kellogg company to pay a stockholder of that company for the stock purchased by the former company from him; also, that by the contract of purchase the Kellogg company should be carried on in the usual manner for the space of one year in order that bills and accounts receivable could be collected in the usual course of business, thus showing a purpose to dissolve the Kellogg company after the expiration of one year.

We have examined the briefs and arguments of counsel for the defendants, and reached the conclusion that the purpose and tendency of the purchase by the American company are sufficiently shown by the bill to be to suppress competition by that company in telephone service to the public and create in the American company a monopoly of that business.

That the American company, a foreign corporation coming into the State of Illinois, is subject to all the rules and regulations provided by the laws of this State cannot be doubted. (Hurd's Stat. 1905, chap. 32, sec. 26, p. 501; *Stevens* v. *Pratt*, 101 Ill. 206; *Bishop* v. *American Preservers' Co. supra; Harding* v. *American Glucose Co. supra; Coler* v. *Tacoma Power Co.* 64 N. J. Eq. 117.) The question here, therefore, is whether the American company, if it had been organized in this State, would have had the power to purchase a majority of the stock of the Kellogg company for the purpose of controlling the latter, and that question, as we have already indicated, has been frequently decided in the negative by this court. The decisions in other States are to the same effect. (*Marble Co.* v. *Harvey,* 92 Tenn. 115; *Nassau Bank* v. *Jones,* 95 N. Y. 115.) In *Pearson* v. *Railroad Co.* 62 N. H. 537, it was said: "A corpo-

ration cannot become a stockholder in another corporation unless such power is given it by its charter or is necessarily implied in it, especially if the purchase be for the purpose of controlling or affecting the management of the other corporations." (*Elkins* v. *Camden and Atlantic Railroad Co.* 36 N. J. Eq. 5; *Great Eastern Railway Co.* v. *Turner,* L. R. 8 Ch. 149.) These authorities fully sustain the position that the purchase by the American company, either in its own name or in the names of others, of the majority stock of the Kellogg company with the purpose and intent of controlling the latter and putting it out of business as a competitor of the American company and its sub-company, the Western Electric Company, was an attempt to exercise a power which it did not have. To permit it to do so would be against the law of this State and its public policy. *Hazelton Boiler Co.* v. *Tripod Boiler Co.* 142 Ill. 494; *Santa Clara Female Academy* v. *Sullivan,* 116 id. 375, and Illinois cases above cited.

The courts below, as we understand their decision, do not uphold the contract of purchase by the American company as one made by it in its own name; nor do we understand counsel for appellees to contend that under the facts alleged in the bill such a purchase could have been lawfully made. It is attempted, however, to show that, inasmuch as the purchase was made in the names of others and the legal title to the stock vested in them, the strict doctrine of *ultra vires* has no application. A court of equity will look through all devices to discover and afford relief against the real situation, and we shall hereafter, in considering another branch of the case, have occasion to cite more at length the authorities bearing on this question. For the present it will be sufficient to cite *Central Railroad Co.* v. *Pennsylvania Co.* 31 N. J. Eq. 475, where a bill was filed by a railroad company to enjoin another from building tracks across the complaining company's tracks, and it was alleged that the defendant had, through its nominees and employees, effected

the incorporation of another corporation for the purpose of building said tracks. A writ of injunction being granted, the court said: "A corporation cannot in its own name subscribe for stock or be a corporation under the general railroad law; nor can it do so by a simulated compliance with the provisions of the law through its agents, as pretended corporators and subscribers of stock." We have fully considered the reasoning of the chancellor on this branch of the case which was adopted by the Appellate Court, and have reached the conclusion that it is based upon a distinction without a legal difference. If, as a matter of fact, the object and purpose of the purchasing company was to acquire such ownership in the Kellogg company as would enable it to control the latter, then, whether it did so by a direct purchase in its own name or through the intervention of agents or trustees, the want of power was the same, and the purchase was strictly *ultra vires,* no matter what the device may have been.

The remaining important question to be considered is whether the complainants below, minority stockholders in the Kellogg company, can maintain this bill. If we are correct in the view that the object of the American company was illegal and that its attempt to acquire ownership of the stock in the Kellogg company was absolutely null and void as being in excess of its chartered powers, then it would seem to follow that each and every stockholder in the latter company would have the right to say that the American company, assuming to own stock which it did not and could not legally own and vote at any meeting of the Kellogg company in the management and control of its business, should be restrained. In other words, every lawful owner of stock in a corporation has the right to say that others assuming to vote shares of stock which they do not have the legal right to vote, shall be restrained. This, we assume, must be admitted, and such is the logical effect of the decision of this court in *Stebbins* v. *Perry County,* 167 Ill. 567.

In *Marble Co.* v. *Harvey, supra,* the Supreme Court of the State of Tennessee, in passing upon the question whether shares of stock in a corporation of that State engaged in a similar business transferred to a trustee chosen by the purchasing corporation for its use and benefit were legally transferred, said: "The evidence shows that the declared purpose of complainant in buying in the shares held by the defendant was to enable it to manage and control the business of the Tennessee company in the interest of the Ohio company. There is no pretense that it had any express power to purchase shares in another company, and it is too clear to need argument or further citation of authority, that it had no implied authority to purchase and hold shares, either in its own name or in that of a trustee, for the purpose of controlling another corporation. * * * The purpose and intent in granting a charter is, that the corporation shall carry on its business through its own agents, and not through the agents of another corporation. The public policy of this State will not permit the control of one corporation by another. Especially is this true when a foreign corporation thus undertakes to control and swallow up a domestic company. Such control of one corporation by another in a like business is unlawful, as tending to monopoly. The result is, that this purchase of shares for the express object of controlling and managing another corporation was *ultra vires,* and therefore unlawful and void. Being void, it was of no legal effect, and no rights result from it enforcible by or through the courts of the State, when such aid is invoked in furtherance of the unlawful agreement." *Nassau Bank* v. *Jones, supra; De La Vergne R. M. Co.* v. *Savings Institution,* 175 U. S. 40.

*Pearson* v. *Railroad Co.* 62 N. H. 537, was a bill by a stockholder of the Concord Railroad Company against the Northern Railroad Company, in the decision of which case the court used the following language: "The court finds that the Northern Railroad Company is the owner of 1290

shares of Concord railroad stock purchased in 1873, upon which it has since voted at the meetings of the Concord railroad. A corporation cannot become a stockholder in another corporation unless such power is given it by its charter or necessarily implied in it, especially if the purchase be for the purpose of controlling or affecting the management of the other corporation. * * * It [the Northern railroad] can no more make a permanent investment of funds in the stock of another road than it can engage in a general banking, manufacturing or steamboat business. It is neither incidental to the purposes of its incorporation nor necessary in the exercise of the powers conferred by its charter. If it can purchase any portion of the corporation stock of the Concord company it may buy up the whole, and thus engage · in a business for which its charter gives it no authority. ·And what will hinder a banking corporation from becoming a manufacturing company, or a manufacturing company from becoming a railroad common carrier? But the facts in this case go farther. The stock was bought at $105 or $106 per share, (par value $50,) a price largely in excess of its market value, and for the purpose of obtaining control of the Concord company and securing more favorable contracts to itself."

Many other cases might be cited in support of the position that all such contracts are *ultra vires* and void.

Nor do we think it can be said in this case there was a mere exercise of an excess of power rendering the transaction merely voidable and not an absolute nullity. We said in *Barnes* v. *Suddard,* 117 Ill. 237, a case in which there had been a mere excess of power (p. 243) : "Had the corporation been clothed with no power to acquire real estate in this State, or if the purchase had been prohibited by statute or contrary to the manifest policy of our laws, a different question would be presented, and the cases of *Carroll* v. *City of East St. Louis,* 67 Ill. 568, and *Starkweather* v. *American Bible Society,* 72 id. 50, might properly be invoked as

authority. But such is not the case." Consequently it was held that relief could not be granted at the instance of a private individual, as was held in the *Carroll* v. *City of East St. Louis,* and *Starkweather* v. *American Bible Society* cases referred to, the remedy in the *Barnes* v. *Suddard case* being only at the instance of the public authorities. In the one case a title vests which may be set aside; in the other the whole transaction is null and void.

But aside from the question as to whether the contract of purchase was *ultra vires* in the sense that the contract became a nullity, we think that such equitable rights are shown in the complainants, though minority stockholders, as ought to entitle them to maintain this bill. It is alleged in the bill, and admitted by the demurrer, that in order to stifle competition in trade and create a monopoly in itself and its licensee company, and for the purpose of enabling it to secure and maintain unreasonable and excessive rates and charges, said American company conceived the illegal purpose of acquiring at least two-thirds of the stock of said Kellogg company, and through such ownership to select and maintain a board of directors which should act in the real interests of and subservient to the American company and free that company and its licensee from the competition of the Kellogg company and independent exchanges; also, that its ultimate purpose was to injure and finally destroy the Kellogg company. That such conduct on the part of the American company was fraudulent as against the stockholders of the Kellogg company cannot be denied, and against which, on the plainest principles of equity, a stockholder in the Kellogg company should have the right to relief. (*Menier* v. *Hooper Telegraph Works,* L. R. 9 Ch. 350.) And, on principle, *Chicago Hansom Cab Co.* v. *Yerkes,* 141 Ill. 320, *Wheeler* v. *Pullman Iron and Steel Co.* 143 id. 197, *Gamble* v. *Queens County Water Co.* 123 N. Y. 91, and *Fougeray* v. *Cord,* 50 N. J. Eq. 185, are in point.

In *Memphis, etc. Railroad Co.* v. *Woods,* 88 Ala. 630, the bill was by stockholders representing a minority of the stock of the Memphis company, and the case was submitted to the court below on a demurrer and motion to dismiss the bill and to dissolve the injunction, which the court overruled and the company prosecuted an appeal. In the decision of the case the Supreme Court held that where a corporation has acquired the majority of the stock of another corporation, its officers, directors or others acting in its interest may be enjoined from exercising the voting power that the majority of the stock confers, so as to govern and control the management of such other corporation, especially when the two corporations have the same field of action and operation and the profits of one may be advanced by lessening those of the other, and where their interests are conflicting as to expenditures and division of earnings. In many respects that case is similar to the one at bar. In the opinion it is said: "We come, then, to the naked inquiry, can one corporation acquire a majority of the stock of another corporation, and by the exercise of the voting power the majority of stock confers, govern and control the management of such corporation?" And the question was answered in the negative. See *State* v. *Newman,* 51 La. Ann. 835.

In *Milbank* v. *New York, Lake Erie and Western Railroad Co.* 64 How. Pr. 20, minority stockholders, on behalf of themselves and others, sought to enjoin another railroad company from voting. The injunction was granted, the court holding that the purchase was against public policy, and used this language: "In the case under consideration the New York, Lake Erie and Western company have acquired, by purchase, the majority of all the stock issued by the Buffalo, New York and Erie railroad. If its officers are permitted to vote thereon they can elect a board of directors of their own choosing. It would then be for the interests of the New York, Lake Erie and Western Railroad Company to have the Buffalo, New York and Erie company managed

and controlled in the interests of the former company. This would be liable to result in injury to these plaintiffs and their fellow-stockholders, and if so, they have a right to complain." See, also, *Parsons* v. *Tacoma Smelting Co.* 25 Wash. 492.

In *Franklin Bank* v. *Commercial Bank,* 36 Ohio St. 350, one bank purchased certificates of stock in the other and sought to have the same transferred upon its books, which was refused, whereupon the bank claiming to have purchased the stock brought an action against the other for conversion, based on refusal to make the transfer, but the court denied the relief, saying: "There would seem to be little doubt, either upon principle or authority and independently of express statutory prohibition of the same, that one corporation cannot become the owner of any portion of the capital stock of another corporation unless authority to become such is clearly conferred by statute. * * * Were this not so, one corporation, by buying up the majority of the shares of stock of another, could take the entire management of its business, however foreign such business might be to that which the corporation so purchasing said shares was created to carry on. * * * Its action in refusing the transfer was but the denial of any right by the plaintiff to be placed in a position to interfere and participate in the control and management of its internal affairs. To the claim of the plaintiff that it was the duty of the defendant to make the transfer when the same was demanded and leave the State to impose the penalty of forfeiture on the plaintiff for a violation of its charter, we do not assent. The cases of *Union Nat. Bank* v. *Matthews,* 98 U. S. 621, and *Jones* v. *Guarantee and Indemnity Co.* 101 id. 622, and cases therein cited, do not support such proposition. The principle of those cases is, that where a corporation is incompetent, by its charter, to take a title to real estate, a conveyance to it is not void, but voidable only, and that the sovereign alone can object; that the conveyance is valid unless assailed in

a direct proceeding instituted for that purpose. But they neither, by the principle maintained nor by the reasoning advanced in support of it, sanction the doctrine that one corporation may buy up the stock of another and thereby enable itself to interfere with the internal management of its affairs, especially where the power to do so is expressly prohibited by its charter."

Other authorities, some of which have been already cited, are to the same effect.

There are other grounds upon which the complainants' right to maintain this bill may be placed, but we do not feel called upon now to extend this opinion for the purpose of pointing them out. Three separate, independent, lengthy briefs and arguments have been filed on behalf of appellants, which have unnecessarily increased the labor of reviewing and deciding the case. We have endeavored only to point out the substantial grounds upon which we hold the defendants to the original bill should have been required to answer the same.

We think the decree of the circuit court sustaining the demurrer to and dismissing the cross-bill is right and should be affirmed. No necessity whatever for that bill is shown. At most, Milo G. Kellogg was a mere nominal party to the original bill. No relief was prayed against him, and if a decree granting the prayer of that bill had been rendered he would have obtained all he was in equity entitled to. Moreover, as a bill to set aside the contract of sale for the fault or misconduct on the part of his attorney, DeWolf, he does not offer to place the purchaser *in statu quo.*

The decree, in so far as it sustains the demurrer to the cross-bill, will be sustained, but for the error in sustaining the demurrer to the original bill the decree will be reversed and the cause remanded, with directions to proceed in conformity with the views herein expressed.

*Decree affirmed in part.*

Afterwards, on consideration of the petition for rehearing in this case, the following additional opinion was filed:

Per CURIAM: The object and purpose of the cross-bill is to rescind the sale of Kellogg's shares of stock on the ground of fraud. In order to entitle him to that relief he must have shown by his bill that he promptly disaffirmed the sale upon discovering the alleged fraud and offered to refund the purchase price which he received therefor or give some sufficient legal excuse for his failure to do so, and in this respect his cross-bill is fatally defective. The rule in this State is, that a party who seeks by bill in equity to rescind a contract of sale for fraud on the part of the purchaser, must, as a condition precedent, offer to re-pay the purchase price. In other words, he must, before filing his bill, offer to restore the purchaser to the same position he was in before the sale was made. The contract is not void, but only voidable at the election of the defrauded party. (*Rigdon* v. *Walcott*, 141 Ill. 649.) And it was there said (p. 662): "The complainant then having failed to show that prior to the filing of his bill he elected to rescind the transaction or agreement complained of, or took any of those steps which are legally necessary to effectuate a rescission, it must be held that, so far as is shown by the bill, said transaction remains in full force and that the complainant is entitled to no relief based upon the theory of its rescission." The rule is clearly stated by Judge Gary in *Duncan* v. *Humphries*, 58 Ill. App. 440, that to lay the foundation for a bill to rescind a contract, the complainant must, before the commencement of his suit, offer and be willing to perform such acts on his part as will restore the defendant to the position which he occupied before the transaction,—citing *Rigdon* v. *Walcott, supra*. It is not sufficient to make the offer in the bill.

The judgment of the Appellate Court as to the cross-bill is right and will be affirmed.          *Judgment affirmed.*